■ In the Matter of ROBIN A. FULLAM II, Respondent, v CAITLIN A. FULLAM, Appellant. [835 NYS2d 455]—

Peters, J. Appeal from an order of the Family Court of St. Lawrence County (Potter, J.), entered March 14, 2006, which, inter alia, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the young, married parents of a daughter (born in 2003). Both parties sought joint custody and primary physical placement of the child. After a trial, Family Court granted legal custody of the child to both parents and primary physical placement with the father. The mother appeals, and we affirm.*

The primary concern in determining child custody is the best interests of the child (see Domestic Relations Law § 240 [1]; Matter of Lopez v Robinson, 25 AD3d 1034, 1035 [2006]; Matter of Putnam v Satriano, 18 AD3d 921, 921 [2005]). This determination requires the consideration of numerous factors which include, among other things, each parties' ability to provide for the child's intellectual and emotional development, and the stability and quality of their respective environments; no single factor is dispositive (see Matter of Roe v Roe, 33 AD3d 1152, 1153 [2006]; Matter of Lopez v Robinson, supra at 1035). Guided by the recognition that Family Court has the unique ability to assess the witnesses' credibility, we will accord its factual determinations deference if we find them supported by the record (see Matter of Roe v Roe, supra at 1153; Matter of Lopez v Robinson, supra at 1035).

---

* Family Court issued an amended order subsequent to the mother's filing of the instant notice of appeal. Although we recognize that "[n]o appeal lies from an original order that has been superceded by an amended order" (Matter of Eric D., 162 AD2d 1051, 1051 [1990]), the amendment is immaterial since it concerned only the correction of the name of the mother's counsel.

Here, it appears that during the course of the parties' marriage, they were both loving and caring parents, sharing responsibility for the care of their daughter. Married two days after her graduation from high school, the mother worked full-time while the father accelerated his studies to graduate high school early and begin employment to support the family. In November 2004, when the child was one year old, the mother left the parties' home in St. Lawrence County to attend a four-week course in the City of Albany; the child remained with the father. Returning home for approximately one month, she then moved to the City of Buffalo, Erie County, to be closer to her "occasional boyfriend" who she met while she was in Albany. Although she originally brought her daughter with her, she placed the child in the maternal grandparents' care four days later without telling the father, claiming that she had been abused by him and that he had threatened their daughter. One week after the child was returned to the mother, she asked the father to retrieve the child. Despite the mother's infidelity, the father brought the child back and forth to Buffalo four or five times during the month that she remained there; not once did the mother return to St. Lawrence County for visitation.

As to the allegations of abuse made by the mother, testimony from the maternal grandmother confirmed that the mother later admitted that her statements were not true. Although there was further testimony regarding the father's threat to harm himself with a knife and a gun, he admitted that his use of these weapons were merely a scare tactic since he was desperate not to lose the mother. He further admitted that his actions were, at times, inappropriate and that he had grabbed the mother's wrists in anger on more than one occasion, once to prevent her from driving after drinking.

The mother currently lives with Shane Terrance, her former employer, and two of his children in the Town of Malone, Franklin County. She testified that she supervised his children in exchange for room, board and a small salary; the financial arrangement differed from the version testified to by Terrance. The father lives with his parents who are renovating their home in order to provide a bedroom for the child. While he is at work, his mother or his mother-in-law watches the child. There was no dispute as to the father's ability to care for the child.

Viewing the totality of these circumstances, we agree with Family Court that the father has consistently placed his child's needs above his own. Although Family Court did not specifically review the factors it considered to reach this determination, it did specify the testimony upon which it relied to support its de-

termination. It found that the inconsistencies in the mother's testimony undermined her credibility, while the father's candid admissions bolstered his credibility. While recognizing that some of the father's behaviors were immature and inappropriate, Family Court agreed with the Law Guardian that the father has been consistently responsible with respect to his child. Finding that the child's best interests are promoted by granting legal custody to both parents, with primary physical placement to the father, we affirm.

Mercure, J.P., Mugglin and Kane, JJ., concur. Ordered that the order is affirmed, without costs.