██ In the Matter of MICHELLE LOPEZ, Respondent, v DWAYNE ROBINSON, Appellant. (And Three Other Related Proceedings.) [808 NYS2d 494]—

Peters, J. Appeal from an order of the Family Court of Tompkins County (Sherman, J.), entered June 24, 2004, which, inter alia, granted petitioner's application, in four proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

The parties are the parents of Dimitri (born in 1999). After the first day of a fact-finding hearing on a custody petition, they stipulated to an order of joint custody which was entered in February 2003. In May 2003, petitioner (hereinafter the mother) filed a violation petition alleging, among other things, that respondent (hereinafter the father) failed to comply with the pick

up and drop off schedule detailed in that order. Her petition was later amended to further allege respondent's abuse of both alcohol and drugs, along with two indicated reports for child abuse and an arrest for sexual misconduct. A custody modification petition was also filed and, pending resolution of these matters, the mother was awarded temporary sole custody of the child. In September 2003, the father cross-petitioned for custody, alleging that the mother was "convicted" of child abuse/neglect, was involved in domestic violence with Gerry Perkins, her paramour, and that Perkins' exposure to the child was detrimental. Prior to the fact-finding hearing on the current petitions, the parties agreed to admit all testimony from the February 2003 hearing into evidence. At the conclusion of the fact-finding hearing, Family Court awarded sole custody of the child to the mother and dismissed both the father's custody petition and the later family offense petition filed by the mother. The father appeals.

Along with various procedural errors, the father essentially contends that sole custody should not have been awarded to the mother. As with all issues concerning child custody, the overwhelming concern must always be the best interest of the child (see *Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]; *see also* Domestic Relations Law § 70 [a]). Our review of the parties' prior custody orders reveals that there was an original order of joint legal custody with visitation to the father which was entered November 3, 1999.* A second custody order of February 2003 was grounded upon a stipulated agreement for joint legal and physical custody after one day of hearings. While we give some weight to the parties' agreement when reviewing a lower court's change in custody, because it was not reached after a full hearing by a trial court (see *Eschbach v Eschbach, supra* at 171), it is only one of many factors to consider (see *id.* at 172). Such factors may also include parenting ability, ability to provide for the child's intellectual and emotional development, stability of the respective parents and the effect that a custodial change might have on the child (see *id.* at 172-173; *Matter of Nehra v Uhlar*, 43 NY2d 242, 250 [1977]; *Matter of Hrynko v Blaha*, 271 AD2d 714, 716 [2000]; *Matter of Gitchell v Gitchell*, 165 AD2d 890, 894 [1990]). Recognizing the unique ability of Family Court to assess the witnesses credibility and their demeanor, great deference will be accorded to its findings, which will not be disturbed if there is substantial support in the record (see *Matter of Schermerhorn v Breen*, 8 AD3d 709, 710 [2004]; *Matter of*

---

* That order is not in this record but appears to have been based upon an agreement of the parties.

*Hitchcock v Kilts*, 4 AD3d 652, 654 [2004]). Relevant here is the recognition that joint custody is inappropriate if the record supports Family Court's determination that the parties are unable to cooperate or communicate with each other in a harmonious fashion (*see Braiman v Braiman*, 44 NY2d 584, 589-590 [1978]).

Family Court's findings on the issue of custody are fully supported. While both parties appear to be loving and caring parents, the record amply supports the finding that the mother has been Dimitri's primary caretaker, despite the negotiated joint physical custody arrangement which appeared to have been inconsistently implemented by the father (*see Matter of Storch v Storch*, 282 AD2d 845, 847 [2001], *lv denied* 96 NY2d 718 [2001]). The child has resided with the mother since birth, she is responsible for the continued management of Dimitri's asthmatic condition, and recognizes how the child's medical issues have impacted upon his educational progress. These findings were supported by testimony from numerous witnesses, which included Dimitri's teacher's aide and his preschool teacher. Moreover, from the mother's testimony and her log entered into evidence, there was sufficient support for the finding that the father failed to consistently exercise his shared time and was unable to pick up the child for school or drop him off in accordance with the agreement.

Family Court also properly considered that there was a previous neglect finding regarding the mother's oldest son and that her past living arrangements were chaotic, but it noted that her current living situation is relatively stable. She now lives in a three-bedroom apartment with Dimitri, Perkins and his daughter. Further recognizing the father's relatively superior financial ability to care for the child, we agree with Family Court that this is just one factor to consider (*see Smith v Smith*, 1 AD3d 870, 873 [2003]) especially where, as here, the mother had been consistently employed prior to her current pregnancy. Extensive evidence detailed the father's drug and alcohol use, lack of supervision of the child, and criminally fraudulent schemes in violation of both federal and state laws. Thus, Family Court's credibility determinations about the father (*see Matter of Hitchcock v Kilts, supra* at 654) are accorded appropriate deference. Moreover, with the record replete with testimony supporting the determination that the parties are unable to effectively communicate with each other, an award of joint custody would not have been appropriate (*see Braiman v Braiman, supra* at 589-590).

Next addressing the father's concerns about Perkins, inasmuch as Family Court did take testimony regarding his 1993

conviction for the criminal sale of a controlled substance in the third degree, his drinking habits, and the circumstances underlying the allegations of domestic violence against the mother, we again defer to its credibility determinations. Nor is there error in Family Court's refusal to produce either petitioner's reports about the mother and Perkins, or records maintained by child protective services regarding Perkins when, after their review in camera, Family Court found the information either not relevant or duplicative (*see Matter of Sarah FF.*, 18 AD3d 1072, 1073-1074 [2005]). Thus, with the full consideration of all of these incidents before a determination was made that the best interest of Dimitri would be served by an award of sole custody to the mother (*see* Domestic Relations Law § 240 [1] [a]; *Matter of Karcher v Byrnes*, 232 AD2d 760, 761 [1996]), we decline to disturb the determination rendered.

Having reviewed and rejected the remaining contention that there was a failure by Family Court to have conducted a *Lincoln* hearing when there was no request for such hearing (*see Matter of Baxter v Perico*, 288 AD2d 717, 717-718 [2001]), we note that had the issue been preserved, we would have found no abuse of discretion due to Dimitri's young age (*compare Matter of Karpensky v Karpensky*, 235 AD2d 594, 596 [1997]).

Mercure, J.P., Carpinello, Rose and Kane, JJ., concur. Ordered that the order is affirmed, without costs.