■ In the Matter of JAMES ROE, Respondent, v SARENIA ROE, Appellant. (Proceeding No. 1.) In the Matter of CHARLES HUNT, Respondent, v SARENIA ROE, Appellant. (Proceeding No. 2.) [823 NYS2d 262]—

Carpinello, J. Appeals (1) from an order of the Family Court of Clinton County (Lawliss, J.), entered March 4, 2004, which granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, to modify a prior order of custody, and (2) from an order of said court, entered May 21, 2004, which, inter alia, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody.

Each of the two proceedings before us involves a decision of Family Court to transfer legal and physical custody of respondent's two children, a son (born in 1999) and a daughter (born in 1998), to their respective fathers, petitioners James Roe and Charles Hunt.[1] The court further ordered supervised visitation in both proceedings. Respondent now appeals from both orders.

Upon our review, we find that Family Court did not err in granting petitioners' respective applications for custody. To

---

1. With respect to the son, respondent and Roe had previously consented to an order which granted them joint custody with physical custody to respondent and liberal visitation to Roe. With respect to the daughter, respondent and Hunt had previously consented to an order which granted sole legal and physical custody to respondent and specified visitation to Hunt.

justify modification of the prior custody orders, each petitioner was required to show a sufficient change in circumstances making modification necessary for the continued best interests of his child (*see e.g. Matter of Goodfriend v Devletsah-Goodfriend*, 29 AD3d 1041, 1042 [2006]; *Matter of De Hamel v Porto*, 22 AD3d 893, 894 [2005]). Moreover, in determining the best interests of each child, the primary consideration here (*see Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]), a court considers such relevant factors as the quality of the respective home environments and each parent's past performance, stability, fitness and ability to guide and provide for the child's development (*see e.g. Matter of Sloand v Sloand*, 30 AD3d 784, 785 [2006]; *Matter of Lopez v Robinson*, 25 AD3d 1034, 1035 [2006]; *Matter of De Hamel v Porto, supra*; *Ulmer v Ulmer*, 254 AD2d 541, 542 [1998]). While the prior custodial arrangement is a consideration, less weight will be accorded to an uncontested stipulation, as here (*see* n 1, *supra*), than an order issued after a full hearing (*see Eschbach v Eschbach, supra* at 172; *Matter of Goodfriend v Devletsah-Goodfriend, supra*; *Matter of Mehaffy v Mehaffy*, 23 AD3d 935, 936 [2005], *lv dismissed* 6 NY3d 807 [2006]). As Family Court had an opportunity to assess witness credibility, its determination must be afforded great deference and will not be disturbed if supported by a sound and substantial basis in the record (*see Matter of Brady v Schermerhorn*, 25 AD3d 1037, 1038 [2006]; *Matter of Graham v Graham*, 24 AD3d 1051, 1052 [2005], *lv denied* 6 NY3d 711 [2006]). Such a basis exists here.

Of grave concern to Family Court, and this Court as well, was respondent's demonstrated poor parental judgment in permitting, among other transient individuals, a known sex offender to move into her home.[2] Evidence in the proceeding involving respondent's daughter further established that respondent then permitted this sex offender to be present for a birthday party in her home despite the issuance of an order of protection prohibiting same. This conduct, coupled with her minimization of this individual's prior criminal history and apparent ignorance of the danger he posed to her children, bore directly on her fitness as to parent.[3]

Similarly, even though yet another order of protection

2. Family Court's precise finding was that respondent's judgment concerning this issue was "non-existent."

3. The record further reveals that respondent knew that this same individual had been convicted of assaulting his wife, which resulted in an order of protection against him. Despite knowledge of both facts—the prior assault and the intact order of protection—respondent saw no problem in being in their mutual presence. While respondent correctly notes that she was not a party

prohibited respondent's stepfather, also a convicted sex offender, from having any contact whatsoever with respondent's daughter, she still permitted her son to be around him. While respondent again attempted to minimize this conduct by pointing out that this order of protection only applied to her daughter, such conduct is justifiably reflective of her poor parental judgment and inability to perceive danger to her children. Family Court further found that respondent's lifestyle was unstable and chaotic, which, in turn, provided the children with an unstable environment. The record supports these findings. Respondent was consistently unemployed yet nevertheless left the children in others' care when they were not with their fathers[4] and moved from one relationship to another with relative alacrity. As noted, she permitted many different people—friends and/or current boyfriends—to move into her home for various periods of time.

There is also evidence that respondent, Roe and the children camped out and/or slept in a car for two weeks because she permitted another man, his girlfriend and her two children to occupy her home. While this incident reflected poorly on both parents, it was respondent who permitted these transient individuals to stay in her home at the expense of her own children.[5] Family Court further credited testimony that respondent intentionally had contact with this same man after he assaulted her and she obtained an order of protection against him.

To be sure, Family Court was not unmindful of Roe's parental shortcomings and specifically noted in the proceeding involving respondent's son that its decision was "hard" and that Roe was "certainly no prize either."[6] Moreover, the record reveals that neither petitioner, Roe in particular, had ideal living arrangements. Nevertheless, the court took these factors into consideration in its decision and ultimately found that respondent's questionable judgment and unstable lifestyle tipped the scale in favor of its finding that a change in custody was in each child's best interest. Taken as a whole, the record is sufficient to support this conclusion (see *Matter of Lopez v Robinson, supra*;

---

to that order and thus did not violate it, her tacit condonation of its violation is but another example of her poor judgment.

4. To this end, we note that both children spent a considerable amount of time with their respective fathers.

5. Her excuse for moving out of her own house was that she could not see *those* children living "on the street."

6. Family Court found Hunt, on the other hand, to be a very credible, hardworking person with a stable lifestyle, close relationship with his daughter and good parental traits.

*Matter of Brady v Schermerhorn, supra*; *Matter of Graham v Graham, supra*; *Matter of Mehaffy v Mehaffy, supra*; *Matter of Drew v Gillin*, 17 AD3d 719 [2005]; *Matter of Adams v Franklin*, 9 AD3d 544 [2004]; *Matter of Weeden v Weeden*, 256 AD2d 831, 833 [1998], *lv denied* 93 NY2d 804 [1999]; *Matter of Jones v Payne*, 113 AD2d 968 [1985]; *see also Matter of Neail v Deshane*, 19 AD3d 758 [2005], *lv denied* 5 NY3d 711 [2005]).

With respect to the issue of supervised visitation, itself a much closer call, we note that such determination is also left to Family Court's sound discretion and it will not be disturbed as long as there is a sound and substantial basis in the record to support it (*see Matter of Custer v Slater*, 2 AD3d 1227, 1228 [2003]; *Matter of Simpson v Simrell*, 296 AD2d 621 [2002]; *Matter of Kryvanis v Kruty*, 288 AD2d 771, 772 [2001]; *Matter of Rauschmeier v Rauschmeier*, 237 AD2d 702, 703 [1997]). Given respondent's past conduct in permitting the children to be around convicted sex offenders, once in direct violation of an order of protection prohibiting same (*cf. Ulmer v Ulmer*, 254 AD2d 541, 543-544 [1998], *supra*), we find no basis to disturb Family Court's conclusion that limiting her to supervised visitation was in each child's best interest (*see Matter of Custer v Slater, supra*; *Matter of Simpson v Simrell, supra*; *Matter of Rauschmeier v Rauschmeier, supra*).

Respondent's remaining contentions, to the extent properly preserved, have been reviewed and found to be unpersuasive.

Cardona, P.J., Mercure, Spain and Mugglin, JJ., concur. Ordered that the orders are affirmed, without costs.