■ In the Matter of ANNETTE L. KILMARTIN, Appellant, v ANDREAS E. KILMARTIN, Respondent. [845 NYS2d 466]—

Spain, J. Appeal from an order of the Family Court of Fulton County (Jung, J.), entered August 12, 2005, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner and respondent were married in 1996 and are the parents of a son (born in 1994) and a daughter (born in 1995) (hereinafter the children). Petitioner also has a daughter who was born in 1991, about six months prior to the start of the parties' relationship. In June 2001, the parties appeared in Family Court and stipulated to the modification of an existing custody and visitation order by consenting to joint legal custody of the children. Petitioner had physical custody weekly from Monday at 3:00 P.M. through Wednesday at 8:00 P.M. and every other Sunday from noon to 8:00 P.M., and respondent was given physical custody of the children for the remainder of the week.* Such terms, however, were not followed by the parties for any significant period of time, as they reconciled and resumed living together with all three children.

On December 30, 2004, after the parties again separated, petitioner commenced two proceedings, pursuant to Family Ct Act articles 6 and 8, seeking to modify the 2001 order of custody, requesting sole custody of the children and, alleging violence in the home, seeking an order of protection. Respondent sought dismissal of the petitions, denying all allegations of violence, and requested sole or joint custody. After a lengthy hearing during which Family Court met with the children and their Law Guardian in camera, the court dismissed the family offense petition as unfounded. In a separate order the court denied petitioner's request for sole custody and awarded respondent, among other things, sole legal custody with weekly parenting time from Thursday at 5:00 P.M. through Monday at 7:00 A.M. Petitioner was granted, among other things, weekly parenting time for the remainder of the week (Mondays from 7:00 A.M.

---

* The resulting order was not reduced to writing and signed by Family Court until October 5, 2001.

through Thursdays at 5:00 P.M.). Petitioner now appeals only from the custody order.

"The primary concern in any child custody case is the best interest of the child" (*Matter of Goodfriend v Devletsah-Goodfriend*, 29 AD3d 1041, 1042 [2006] [citations omitted]; *see Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]; *Matter of De Hamel v Porto*, 22 AD3d 893, 894 [2005]). Modification of an existing custody order "must be supported by a showing of a [sufficient] change in circumstances revealing a real need for the modification to ensure the ongoing best interests of the children" (*Redder v Redder*, 17 AD3d 10, 12-13 [2005]; *see Matter of Crippen v Keator*, 9 AD3d 535, 536 [2004]). The parties' 2001 custody arrangement to which they stipulated is a factor to be considered in this analysis, although it is entitled to less weight than a custody order that resulted from a plenary hearing (*see Redder v Redder*, 17 AD3d at 13; *Matter of Crippen v Keator*, 9 AD3d at 536).

Here, the parties' 2001 stipulated joint custodial arrangement was effectively abandoned when, within a short time, they resumed living together as a family with the three children for at least 2½ years. Given the substantial period of time that both parents resided together with the children following their consent to that prior custody order, we find a sufficient change in circumstances to justify a modification and reconsideration of the previous joint legal custody order (*see Redder v Redder*, 17 AD3d at 13). Further, the proof regarding the pronounced deterioration of the parties' relationship to a point where they were antagonistic and embattled, unable to cooperate and communicate effectively or amicably for the sake of their children's welfare, also presents a sufficient change in circumstances (*see Matter of Pecore v Pecore*, 34 AD3d 1100, 1101 [2006]; *see also Matter of Adams v Franklin*, 9 AD3d 544, 545 [2004]).

When viewed in its totality, the record presents a mosaic of disturbing and conflicting cross-accusations, from which emerges the conclusion that the parties were embattled and incapable of acting in harmony with respect to their children. Further, due to their unwillingness to deal with one another in a civil fashion for even brief periods of time, the parties have had to resort to relying on the assistance of a third party to transfer the children between them. They each concede that a joint custodial arrangement is unworkable. Family Court agreed, finding that the parties' relationship was so acrimonious and embattled that an award of sole legal custody was necessary, and that conclusion is amply supported in the record (*see Matter of Eck v Eck*, 33 AD3d 1082, 1083 [2006]).

In determining the children's best interests, a court must view all of the circumstances while considering certain factors, including maintaining stability for the children, the children's wishes, the home environment with each parent, each parent's past performance and relative fitness, each parent's ability to guide and provide for the children's overall well-being and the willingness of each to foster a positive relationship between the children and the other parent (*see id.*; *Matter of Smith v Miller*, 4 AD3d 697, 698 [2004]). Indeed, the effect of any alleged domestic violence upon the children is a factor that must be considered, among others, in custody cases (*see* Domestic Relations Law § 240 [1] [a]; *Matter of Lopez v Robinson*, 25 AD3d 1034, 1037 [2006]; *see also Matter of Wissink v Wissink*, 301 AD2d 36, 39 [2002]).

While it appears from the record that both parties have considerable personal flaws as spouses and use vulgarities in the presence of the children, they are generally kind, loving and stable parents who are loved by the children. Neither party is physically violent with the children beyond an occasional disciplinary spanking on the buttocks, and each party provides a suitable and clean home for the children and prepares appropriate meals for them. Neither party lives in a location which would force the children to change schools and both are familiar with their children's education and schedules, play board games with them, assist them with homework and watch age appropriate movies and programs with them. Additionally, the record reflects that both parties are aware of their children's medical requirements and administer needed medications to them properly.

Notably, although Family Court dismissed the family offense petition (which petitioner has not appealed), domestic violence throughout the course of their relationship was reported by both parties. Respondent acknowledged that he sometimes has difficulty controlling his temper and that he voluntarily attended counseling for such difficulties in 2002. The record also reveals that petitioner frequently loses her temper, uses vulgarity and screams at the children when supervising them and that she had prevented her other daughter, despite her close relationship with respondent, from contacting respondent. The court took the behavior of both parties into consideration in assessing the impact of any domestic violence on the children who were present during many of their heated confrontations (*see* Domestic Relations Law § 240 [1] [a]; *Matter of Wissink v Wissink*, 301 AD2d at 39-40).

As to the ability of each parent to foster a good relationship

between the children and the other parent, petitioner has limited the children's access to respondent by phone and has scheduled programs for them in such a manner as to disrupt respondent's parenting time with them. In contrast, respondent stated that he had no objection to the children residing with petitioner part of the week, and that he is willing to work with petitioner for the benefit of the children.

Finally, Family Court credited testimony by others that the children appear more calm when they are with respondent, that they are more attentive and responsive to directions given by him, that they have greater respect for him and that he exhibits a positive consistency with regard to parental decision-making. In our view, Family Court's order, including its schedule of parental access, is supported by a sound and substantial basis in the record and represents a principled attempt at devising a plan that will avoid the intensive stresses and pressures that the children have faced in the past (*see Matter of Leach v Santiago*, 20 AD3d 715, 716 [2005], *lv denied* 6 NY3d 702 [2005]; *Matter of Collins v Brush*, 17 AD3d 726, 728 [2005]; *Matter of Scialdo v Kernan*, 14 AD3d 813, 814 [2005]).

Petitioner also contends that she was denied the effective assistance of counsel (*see* Family Ct Act §§ 261, 262; *Matter of Thompson v Gibeault*, 305 AD2d 873, 875 [2003]). Here, petitioner's counsel called several witnesses during her case-in-chief for the purpose of corroborating her lengthy testimony, made relevant objections, called appropriate witnesses, vigorously cross-examined respondent's witnesses, made appropriate motions, and put forth a proper opening statement and summation. The record supports the conclusion that petitioner received meaningful representation (*see Matter of Thompson v Gibeault*, 305 AD2d at 875; *Matter of Jonathan LL.*, 294 AD2d 752, 753 [2002]; *Matter of James HH.*, 234 AD2d 783, 785 [1996], *lv denied* 89 NY2d 812 [1997]).

Petitioner further claims that counsel was ineffective in failing to make a written motion to disqualify respondent's counsel from the case due to petitioner's allegation that he had previously represented both parties. After respondent's counsel admitted in court that he had represented the parties in the past, including on a neglect petition, petitioner's counsel made an oral motion for disqualification, which was opposed by respondent. Family Court ultimately determined that a written motion placing respondent's counsel on notice with regard to the specific conflict allegations was required. Counsel for petitioner, however, never made such motion and petitioner now claims that such a failure to pursue disqualification constituted

the ineffective assistance of counsel. While respondent's counsel is noted as having successfully represented both respondent and petitioner as appellate counsel before this Court with regard to a neglect proceeding involving all three children in the past (*see Matter of Cassandra M.*, 260 AD2d 961, 961 [1999]), no proof has been proffered by petitioner establishing that the matters involved in both representations are adverse or substantially related (*see Solow v Grace & Co.*, 83 NY2d 303, 308 [1994]; *Mc-Dade v McDade*, 240 AD2d 1010 [1997]; *cf. R.M. Buck Constr. Corp. v Village of Sherburne*, 292 AD2d 36, 39 [2002]). Her allegation that counsel's failure to file a written motion seeking disqualification was an error—as opposed to a strategic decision made by counsel not to pursue the matter—is speculative (*see Matter of Brenden O.*, 20 AD3d 722, 723 [2005]; *Matter of Baker v Baker*, 283 AD2d 730, 731 [2001], *lv denied* 96 NY2d 720 [2001]). Further, petitioner has not demonstrated any actual prejudice arising from counsel's failure to file a written disqualification motion (*see Matter of Yette v Yette*, 39 AD3d 952, 954 [2007], *lv denied* 9 NY3d 802 [2007]; *Matter of Michael DD.*, 33 AD3d 1185, 1187 [2006]). As petitioner has not met her burden, we find her assertions to be without merit.

We are similarly unpersuaded by petitioner's remaining contentions.

Mercure, J.P., Peters, Carpinello and Mugglin, JJ., concur. Ordered that the order is affirmed, without costs.