██ In the Matter of JOHN T. MARTIN, Respondent, v STAR L. MARTIN, Appellant. (And Two Other Related Proceedings.) [846 NYS2d 696]—

Carpinello, J. Appeal from an order of the Family Court of Rensselaer County (Cholakis, J.), entered January 6, 2006, which, among other things, granted petitioner's application, in three proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

By an order entered on consent in November 2002, these divorced parties were awarded joint legal custody of their two sons with physical custody to respondent (hereinafter the mother) and visitation to petitioner (hereinafter the father). In August 2004, amid controversy over visitation, communication about the boys' health and education and an inability to communicate generally, the father filed two petitions, one alleging a violation of the prior order and another seeking modification of custody. The mother filed a cross petition also seeking a modification of custody. Following fact-finding and *Lincoln* hearings, Family Court found that the father sustained his violation petition and modified the prior order by granting him sole legal and physical custody. The mother appeals.

"An existing custody arrangement may be modified upon a showing that there has been a subsequent change of circumstances and modification is required to ensure the best interests of the children" (*Matter of Laware v Baldwin*, 42 AD3d 696, 696 [2007] [internal quotation marks and citation omitted]). In determining the best interests of the children, the primary consideration here (*see Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]), numerous relevant factors are considered, including the "quality of the respective home environments and each parent's

past performance, stability, fitness and ability to guide and provide for the child's development" (*Matter of Roe v Roe*, 33 AD3d 1152, 1153 [2006]; *see Matter of Lopez v Robinson*, 25 AD3d 1034, 1035 [2006]). While a prior custodial arrangement is a consideration, less weight will be accorded to an order entered on consent than an order issued after a full hearing (*see Eschbach v Eschbach*, 56 NY2d at 172; *Matter of Roe v Roe, supra*; *Matter of Lopez v Robinson, supra*). Upon our review of the record, and according great deference to Family Court's assessment of credibility (*see e.g. Matter of Robinson v Cleveland*, 42 AD3d 708, 710 [2007]; *Matter of Lopez v Robinson, supra*; *Matter of St. Pierre v Burrows*, 14 AD3d 889, 890 n [2005]), we find that its decision to grant the father sole legal and primary physical custody of the children has a sound and substantial basis in the record promoting their best interests (*see Matter of Roe v Roe, supra*).

With respect to the precise decision to terminate the joint custodial arrangement, the record overwhelmingly establishes that these parents are unable to communicate on any level in a mature fashion, despite coparenting counseling sessions following the prior consent order (*see Matter of St. Pierre v Burrows*, 14 AD3d at 891). Indeed, the mother herself appropriately describes their relationship as "abysmal." She nevertheless denounces the decision to modify custody from joint to sole on the ground that the record fails to establish the extent to which their relationship deteriorated since the prior order. In other words, according to the mother, because there is no way of knowing if they were "more antagonistic" as of the hearing than they had been in the past, the change in custody was improper. Charitably stated, we are unpersuaded. The mother's own testimony is telling on this very issue.

Significantly, the mother testified that the parties' level of conflict as of the hearing was greater than they experienced "even during [their] marriage" and repeatedly testified that there had been "heightened" and "a lot more" conflict between them over the previous 14-month period such that "[e]very single little nit picking thing [was] becoming a court issue." According to her testimony, the parties are unable to get along with each other, unable to tolerate each other's presence and are involved in "constant explosions." Moreover, again according to the mother, "every attempt . . . to give [the father] information turns into a conflict situation" and that, "because of the level of conflict," it is better for them to attend separate teacher conferences and avoid "face-to-face" contact.

In addition to the mother's testimony about the nature of the

parties' relationship, the record reveals that during the time period following the prior order, the mother had only sporadic telephone and/or computer services thus preventing any consistent communication with the father in the first instance. More importantly, since the prior order and despite their joint custody status, the mother withheld important information about the children from the father, including the older child's evaluation with a psychologist and the younger child's trouble in kindergarten which necessitated various school meetings to address and which ultimately led to him repeating that grade. She also made major unilateral decisions about the children without consulting the father, such as giving the school permission to hold their younger son back for another year and putting their older son on Ritalin to treat attention deficit disorder despite the father's objection to doing so without first exhausting other treatment options (*see Matter of Scialdo v Kernan*, 14 AD3d 813, 814-815 [2005]). Additionally, subsequent to that prior order, the parties' animosity toward each other was so great that each found it necessary to invoke intervention by police and the local social services agency concerning relatively minor spats. In sum, we are indeed satisfied that a sufficient change in circumstances was demonstrated warranting a modification of custody from joint to sole in order to promote the best interests of their children (*see e.g. Matter of Roe v Roe*, 33 AD3d at 1154-1155; *Matter of Scialdo v Kernan, supra*).

As to Family Court's decision to grant the father sole custody instead of the mother, the court appropriately considered each parent's respective strengths and weaknesses but ultimately ruled that the facts tipped in favor of the father (*compare Matter of St. Pierre v Burrows, supra*). We again find that this determination has a sound and substantial basis in the record promoting the children's best interests. In addition to withholding information from the father and making unilateral decisions concerning the children, the mother made insufficient efforts to permit the father to care for the children while they were sick, to provide the father with additional visitation as contemplated in the consent order and to provide the children with a stable home environment. In short, despite his own parental weaknesses, the father proved to be the more appropriate custodial parent for these boys (*see Matter of Roe v Roe, supra*; *Matter of St. Pierre v Burrows, supra*; *Matter of Scialdo v Kernan, supra*).

Cardona, P.J., Crew III, Peters and Spain, JJ., concur. Ordered that the order is affirmed, without costs.