ORFINGER, J.
Robert A. Lewandowski, the former husband, timely appeals an order denying his post-dissolution petition to change primary residential custody of the parties’ child from the former wife, Jean Lewan-dowski n/k/a Jean Langston, to him. The former husband maintains that the trial court erred in concluding that there had been no substantial change of circumstances. We agree and reverse.
In October 2000, the trial court entered a final judgment of dissolution of marriage that incorporated the parties’ marital settlement agreement (“MSA”). The MSA designated the former wife as the primary residential parent of the child, provided that the parents shared parental responsibility of the child, and granted the former husband liberal visitation during holidays and summer. In September 2005, the former husband filed a petition requesting primary custody of the child, alleging that the child could be exposed to future sexual child abuse due to the former wife’s marriage to Robert Langston, a registered sex offender.
The facts found by the trial court are unchallenged on appeal. We discuss them in detail, as they are important to our analysis. The parties’ only child, a boy, is now nine years old. During the pendency of the dissolution proceedings, the former husband agreed that the child could relocate to Alabama with the former wife. Despite the distance between the former husband’s residence in Florida and the former wife’s home in Alabama, the former husband maintained a very close relationship with the child. The former husband has visited the child five or six times in Alabama, and the child has visited him numerous times in Florida, including every Christmas, spring break, Labor Day, Thanksgiving holiday and summer. The former husband has a very close relationship with his immediate family who all live in Brevard County, Florida, and the child enjoys a good relationship with that family-[1]
*1167 In December 2005, the former husband married his current wife, and they reside in the former marital residence, a three-bedroom, two-bath home. The child has his own room at the former husband’s home. The former husband’s new wife has a good relationship with the child and has taken him on various outings since she started dating the former husband in April 2000. She testified that she would welcome him into the home on a full-time basis.
The former wife and her family also enjoy a close relationship with the child. The child has lived with the former wife all of his life. However, from the time of the divorce, the former husband has always had a “better”[2] residence than the former wife. Since relocating to Alabama in 1999, the former wife has lived in six different residences, mostly double-wide mobile homes, and the child has attended three different schools. Notwithstanding, the child has had his own room in each of these residences, and is presently on the honor roll.
The former wife testified that when she first moved to Blountsville, Alabama, she resided with her parents in a double-wide mobile home. After her parents built a new home, she and the child remained in the mobile home, which was moved to another location on the property. Because the former wife was not satisfied with the Blountsville school, she enrolled the child in a daycare facility, and later kindergarten, in Cleveland, Alabama, approximately seven miles away. The child remained in the Cleveland school until the former wife remarried in January 2004 and moved to Hartsford, Alabama. The former wife promptly enrolled the child in school in Hartsford. However, the former wife’s marriage only lasted two months. The former wife then returned to Blountsville and put the child back in his Cleveland school. Upon the former wife’s return to Blountsville, she resided with her parents for six to eight months. She then moved to a two-bedroom historic farmhouse in Blountsville.
In January 2005, the former wife began attending community college, pursuing an Associates of Arts degree in computer programming. While attending community college, the former wife met and married Mr. Langston, a sex offender registered in the State of Alabama. When the former wife met Mr. Langston, he was working as a police officer in Hanceville, Alabama. Mr. Langston was then hired as a police officer in Blountsville. However, Mr. Langston resigned after it was discovered that he was a registered sex offender. Mr. Langston was later charged with violating the Alabama sex offender’s community notification statutes by being employed within 2,000 feet of a child care facility. In May 2006, he pled guilty to the charge and was sentenced to ten years in prison, suspended, and placed on supervised probation for three years.
At the time the former wife married Mr. Langston in July 2005, she knew of his sex offender status, and had investigated the circumstances of his conviction. Mr. Langston had been convicted of a misdemeanor charge of inappropriate touching of a minor. The victim was his twelve-year-old daughter and his parental rights with her have been terminated. Still, the trial court found that the former wife minimized the severity of the circumstances of Mr. Langston’s conviction, explaining that Mr. Langston’s charge was reduced to a *1168 misdemeanor and involved “inappropriate touching,” which cannot be defended against. She does not believe that Mr. Langston has done anything wrong, explaining that he was going through a divorce involving a custody dispute when he was charged. She testified that she has no concerns about him being around the parties’ minor child.
At the time of the former wife’s remarriage, the child was visiting the former husband in Florida. When the child returned to Alabama, he lived with the former wife and Mr. Langston in Winfield, Alabama, and was enrolled in the second grade in the Winfield school system. The former wife notified the former husband of her remarriage and advised him that Mr. Langston had been “accused” of inappropriately touching his twelve-year-old daughter. However, she did not tell the former husband that Mr. Langston was a registered sex offender. In August 2005, the former husband accessed the Alabama Department of Public Safety’s website, and learned that Mr. Langston was a registered sex offender. The former husband then contacted the Alabama Department of Child Welfare. The Department investigated, but took no action. The former husband also hired a private investigator to investigate the former wife and Mr. Langston, but the investigation turned up nothing more of consequence.
In September 2005, the former husband filed his petition for a change of custody. The former husband testified that he was concerned for the child’s safety. However, he acknowledged that there was no evidence that the child has been sexually abused while in the former wife’s care.
Alabama law prohibits Mr. Langston from residing in the same home as the minor child. Until the former husband filed his petition, the former wife said she was unaware of the law. Once the petition was filed, the former wife and the child moved to a separate residence. The former wife first moved into a one-bedroom apartment in Winfield, Alabama; however, she later secured a two-bedroom apartment in the same building. In May 2006, she moved into a two-bedroom two-bathroom double-wide mobile home approximately two-tenths of a mile from where Mr. Langston lives. Mr. Langston’s parents own both residences. Although Mr. Langston “lives” at a separate residence, during the day he interacts with the former wife and child as a family. They go to church, hiking, and other outings as a family until the evening, when Mr. Langston leaves and sleeps in his own residence. The former wife said she has no intention of divorcing Mr. Langston, but testified that if she had to choose between Mr. Langston and her son, she would choose her son.
At the conclusion of the hearing on the former husband’s motion to modify custody, the trial court announced a temporary order, which provided that the former wife could not reside in the same household with Mr. Langston and that Mr. Langston could not be in the child’s presence without constant adult supervision. The trial court explained this meant that when the child, the former wife, and Mr. Langston were in the same residence, the adult supervision had to be present on a room-to-room basis. The trial court later entered a final order, denying the former husband’s petition for a change of custody. In its order, the trial court acknowledged that the circumstances were not “ideal,” but determined that the former husband had failed to present any evidence that the child was in an unsafe environment. In making this determination, the court found that there was no evidence that the child had been sexually abused while in the former wife’s care, or exposed in any direct manner to any un *1169 safe conditions, and noted that during the pendency of the proceedings, the Alabama Child Welfare Agency and the former husband’s private investigator had both investigated the former wife and Mr. Langston but found nothing. Still, the court ordered that the former wife could not allow the child to reside in the same household with Mr. Langston and that Mr. Langston could not be in the child’s presence without constant, direct supervision.
When a party seeks modification of a final judgment of dissolution of marriage to change the custody of a child, that party bears the burden of establishing the existence of a substantial and material change in circumstances since entry of the final judgment, and that the change in custody will be in the best interests of the child. E.g., Wade v. Hirschman, 908 So.2d 928, 933-34 (Fla.2005). This Court’s standard of review is abuse of discretion. Id. at 935. To determine whether an abuse of discretion has occurred, we look to the record for competent, substantial evidence to support the trial court’s decision. Id.; accord Zediker v. Zediker, 444 So.2d 1034, 1038 (Fla. 1st DCA 1984).
On these unchallenged facts, the evidence leads to the inescapable conclusion that the former wife’s actions, which exposed the child to a registered sex offender on a regular basis, constituted a material change of circumstances affecting the physical and emotional health, safety, and well-being of the child. See Albert T. v. Wanda H., No. 07126 (N.Y.App.Div., Sept. 28, 2007); K.E.W. v. T.W.E., No. 2060187, — So.2d-, 2007 WL 2069512 (Ala.Civ. App. July 20, 2007); Roe v. Roe, 33 A.D.3d 1152, 823 N.Y.S.2d 262 (NY.App.Div. 2006); Mock v. Mock, 673 N.W.2d 635, 638 (N.D.2004); D.N. v. J.H., 782 So.2d 323 (Ala.Civ.App.2000). See generally In re R.A.J., 671 N.W.2d 532 (Iowa Ct.App. 2003); In Re Marriage of Faulhaber, No. 2001-P-0110, 2002 WL 1401066 (Ohio Ct. App. June 28, 2002). It seems inconsistent to find no change in circumstances, while at the same time ordering Mr. Langston out of the house and requiring constant supervision when the child is present.
The next question is whether a change in custody will materially promote the best interests of the child. Wade, 903 So.2d at 934. This question involves the same broad “best interest” inquiry as an initial custody determination. Ogilvie v. Ogilvie, 954 So.2d 698, 700 (Fla. 1st DCA 2007). Because the trial court found no material change in circumstances, the court reached no conclusions on what would be in the child’s best interests.
The order denying the former husband’s petition for a change in primary physical custody is reversed and remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
GRIFFIN and EVANDER, JJ., concur.

. The former husband admitted that he allowed the child a sip of beer in order to satisfy his curiosity about it. He also admitted that he was convicted of reckless driving in 1999. (He was originally charged with DUI). The child was not with him at the time.

. We assume that the trial judge concluded the former husband’s residence was “better” in that it was more spacious and comfortable.