■ In the Matter of Gregory P. Goldsmith, Respondent, v Renee M. Goldsmith, Appellant. [859 NYS2d 749]—

Kavanagh, J. Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered December 15, 2006, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

In June 2005, petitioner (hereinafter the father) and respondent (hereinafter the mother) consented to the entry of an order which provided for joint legal custody of their seven-year-old child, with the mother having primary physical custody. One year later, the mother filed a modification petition seeking permission to relocate to Kentucky with the child. In response, the father filed a petition requesting that he be awarded primary physical custody of the child. While a hearing was being conducted on both applications, the mother withdrew her request for permission to relocate to Kentucky. After the fact-finding hearing was completed, Family Court granted the father's petition, awarded him sole custody of the child and provided visitation rights for the mother. We affirm.

To modify an existing custody order, there must be "a showing of sufficient change in circumstances reflecting a real need for change in order to insure the continued best interest of the child" (*Matter of Van Hoesen v Van Hoesen*, 186 AD2d 903, 903 [1992]; *see Matter of Mehaffy v Mehaffy*, 23 AD3d 935, 936 [2005], *lv dismissed* 6 NY3d 807 [2006]). We agree with Family Court that the father has established that a change in circumstances has in fact occurred which requires a modification of the existing custody order. Given the obvious inability of these parents to work and communicate with one another for the best interest of their child, continued joint custody is simply not feasible (*see Matter of Grant v Grant*, 47 AD3d 1027, 1028 [2008]). The evidence submitted during the hearing clearly and convincingly established that the mother was the party primarily responsible for this ongoing inability to cooperate in decisions which relate to the child's welfare and development.

Upon making such a finding, Family Court was then required to decide what custodial arrangement would serve the best interest of the child (*see Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]; *Matter of Martin v Martin*, 45 AD3d 1244, 1244 [2007]), taking into consideration "such relevant factors as maintaining stability in the child's life, the wishes of the child, the quality of the home environment, each parent's past performance, relative fitness and ability to guide and provide for the child's intellectual and emotional development, and the effect the award of custody to one parent would have on the child's re-

lationship with the other" (*Matter of Fletcher v Young*, 281 AD2d 765, 767 [2001]; *see Matter of Grant v Grant*, 47 AD3d at 1028; *Matter of Kilmartin v Kilmartin*, 44 AD3d 1099, 1102 [2007]). According due deference to the credibility determinations made by Family Court (*see Matter of Bedard v Baker*, 40 AD3d 1164, 1165 [2007]; *Matter of Wendy Q. v Richard Q.*, 36 AD3d 1000, 1001 [2007]; *Matter of Eck v Eck*, 33 AD3d 1082, 1083 [2006]), there is ample support for its finding that circumstances concerning each parent's relationship with the child as well as with each other has changed to such an extent as to warrant a modification of the existing custodial arrangement and to award physical custody to the father.

Specifically, the father has established at the hearing that while being primarily in charge of the child's care and wellbeing, the mother's lifestyle has been chaotic and unstable. She has failed to obtain permanent employment, refused to cooperate with school officials in addressing the child's special educational needs, has not had permanent housing, and has consistently made unilateral decisions which affect the child's care and development.[1] She has often used inappropriate language in the presence of the child and, while acknowledging difficulty in controlling her temper, the mother has refused to participate in anger management therapy and simply does not appear to recognize the impact these tirades have had on her son.[2] The evidence also established that the mother has repeatedly sought to convince the child throughout this proceeding that it is the father's fault that they are involved in this litigation and admits telling the child on at least one occasion that he had to go to court because "your father is making you." In addition, during the five-month period prior to the hearing, the mother has moved with the child to three different residences, and during the hearing she was living with a male friend at his abode and not paying rent.

This description of the mother's lifestyle and her relationship with the child stands in stark contrast to that of the father, who has been in a stable relationship with the same woman for more than four years with whom he has a daughter. They have lived as a family in the same residence for the last two years, are both gainfully employed and the father is in the process of

---

1. In fact, while this proceeding was pending, the mother, without the father's knowledge and consent, transferred the child to another school district. An order was subsequently issued directing the child's return to the school district that he was attending at the commencement of this proceeding.

2. In one instance, a teacher reported that the mother told the child that she was going to have the father put in jail as a result of his participation in this proceeding.

completing courses so that he can obtain an Associate's degree. The father has faithfully cooperated with school officials in an effort to address the child's special educational needs and has been fully involved in the development of an appropriate curriculum for the child for the school year. Finally, the child's Law Guardian supports the conclusion reached by Family Court that it is in the child's best interest that custody be given to the father and that he be placed in a position to more intimately chart the child's development and monitor his progress (*see Matter of Bruce BB. v Debra CC.*, 307 AD2d 408, 409 [2003]; *see also Matter of Young v Collins*, 37 AD3d 1014, 1014 [2007]). On balance, the record supports the conclusion that "the child would enjoy a more stable and supportive environment if custody were granted to [the father]" (*Matter of Bedard v Baker*, 40 AD3d at 1166).

Finally, we disagree with respondent's claim that Family Court erred by not ordering more visitation. "The propriety of visitation is left to the sound discretion of Family Court and its findings, guided by the best interests of the child, will not be disturbed unless they lack a sound basis in the record" (*Matter of Moore v Schill*, 44 AD3d 1123, 1123 [2007] [citations omitted]; *see Matter of Roe v Roe*, 33 AD3d 1152, 1155 [2006]).

We have reviewed the mother's remaining contentions and find them lacking in merit.

Cardona, P.J., Carpinello, Lahtinen and Malone Jr., JJ., concur. Ordered that the order is affirmed, without costs.

