■ In the Matter of RANDOLPH S. THOMAS, Respondent, v ALICIA D. OSBORNE, Appellant. (And Four Other Related Proceedings.) [857 NYS2d 323]—

Kavanagh, J. Appeal from a corrected order of the Family Court of Otsego County (Coccoma, J.), entered October 19, 2006, which, among other things, granted petitioner's application, in five proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of one son (born in 2000). The mother had sole custody of the child, but, in July 2005, the father filed a petition to modify custody alleging, among other things, that the child was being abused while in the mother's home. After a first appearance, Family Court directed the Otsego County Department of Social Services (hereinafter DSS) to conduct an investigation pursuant to Family Ct Act § 1034. After a report was filed with the court by DSS,[1] Family Court issued an order of protection which prohibited the mother from allowing the child to have contact with Daniel Garbera and Pamela Trask, two individuals with whom the mother was residing, and from residing at the home with Garbera and Trask. Thereafter, in January 2006, a custody and visitation order was issued, upon agreement, awarding joint legal custody, with the father having physical custody. The order also specified that the mother would have parenting time with the child on alternate weekends and required the mother to comply with the order of protection. The mother did not file an appeal from this order.

Both parties then filed modification and violation petitions. The father alleged that the mother failed to comply with the order of protection, specifically that the child continued to have contact with Garbera and Trask. As a result, the father sought sole custody of the child. The mother's petitions alleged that the father had willfully violated the custody and visitation order

---

1. In the investigation, DSS attempted, without success, to interview the two individuals with whom the mother resided, Pamela Trask and Daniel Garbera. The residence in which the mother resides is owned by Garbera.

because he acted in a way designed to interfere and effectively deprive her of her right to visit with the child. She also claimed that the father was harassing her by repeatedly parking his automobile on her lawn when he brought the child to her home. After a hearing on all petitions, Family Court found that the father had not willfully violated the custody and visitation order and denied the mother's petitions. It also found that the mother had failed to comply with the order of protection by allowing the child to have continued contact with Garbera and Trask and that the child had been harmed by the mother's failure to abide by the provisions contained in the order of protection. The court granted the father's petition and awarded him sole custody of the child, with supervised visitation by the mother for two hours on alternating Saturdays and for 1½ hours every Wednesday. Family Court also extended the order of protection until the child's 18th birthday.[2] The mother now appeals.

Initially, it must be noted that it has been clearly established, given the parties' obvious antipathy for each other and their inability to effectively communicate and work together regarding the child, that joint custody is simply not feasible nor is it in the child's best interest (*see Matter of Goldsmith v Goldsmith*, 50 AD3d 1190, 1191 [2008]; *Matter of Kilmartin v Kilmartin*, 44 AD3d 1099, 1101 [2007]; *Matter of Eck v Eck*, 33 AD3d 1082, 1083 [2006]). The father also established that circumstances had sufficiently changed since the January 2006 custody order was issued and, therefore, a modification was required (*see Matter of Grant v Grant*, 47 AD3d 1027, 1028 [2008]; *Matter of Martin v Martin*, 45 AD3d 1244, 1245 [2007]; *Matter of Kilmartin v Kilmartin*, 44 AD3d at 1101).

The mother's flagrant violation of Family Court's direction that the child not have any contact with either Garbera or Trask is stark proof that a modification of the custodial arrangement was in the child's best interest (*see Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]; *Matter of Kilmartin v Kilmartin*, 44 AD3d at 1101). Family Court's concern regarding the exposure of this child to these two individuals is well founded. Garbera not only has a history of domestic violence and a criminal record, but he has been the subject of two indicated reports to the New York State Central Register of Child Abuse and Maltreatment which alleged that, on separate occasions, he threatened to shoot his former wife with a loaded shotgun while she held their four-month-old child and later discharged a loaded firearm into a residence where his

---

2. This October 2006 corrected order was later slightly modified, changing the Wednesday visitation to alternating Wednesdays, because the mother had problems regarding transportation.

wife and child slept. Trask has children of her own and, because of her inability to provide for their care and well-being, has consented to the termination of her parental rights. Equally important, each has refused to cooperate with DSS in its investigation into allegations that the child had been physically abused while at their residence. Also, evidence introduced at the hearing confirmed that their contact with the child has had a profound and adverse impact upon him. The mother's failure to recognize the risk posed to her child by her ongoing relationships with these two individuals, and her willingness to persistently place her own self-interest above that of her child, established that a modification in custody and visitation is clearly needed and was in the child's best interest (*see Matter of VanDusen v VanDusen*, 39 AD3d 893, 894 [2007]; *Matter of Wiedenkeller v Hall*, 37 AD3d 1033, 1036 [2007], *lv denied* 8 NY3d 816 [2007]; *Matter of Roe v Roe*, 33 AD3d 1152, 1153 [2006]).

Moreover, testimony at the hearing revealed that the child has responded positively to his father being principally charged with his care. The father has facilitated the child's involvement in counseling in an effort to treat his propensity towards anger and aggression. Since the child has resided principally with the father, he appears to enjoy school and has participated enthusiastically in church activities with his extended family. The child's situation has, by any measure, substantially improved since he has been with the father and we see no reason to disturb Family Court's decision to award the father sole custody of the child.

Nor do we find merit in the mother's complaints that the social worker who testified at the hearing was not objective and exhibited a pronounced bias in favor of the father. Karrie Crippen, a licensed social worker, testified to meeting biweekly with the child since January 2006. During those sessions, she reported that the child had told her that he was afraid of "Dan," had recurring nightmares and was obviously reluctant to talk about any time that he had spent with his mother. Crippen recommended, based upon her observations, that the child be evaluated by a psychiatrist and offered opinions at the hearing concerning the child that were based primarily upon her observations of him over a six-month period. Moreover, her testimony was simply part of a larger body of proof introduced during the course of this hearing which provided ample support for Family Court's determination that it was in the child's best interest to award sole custody to the father (*see Matter of Robinson v Cleveland*, 42 AD3d 708, 710 [2007]; *Matter of Millett v Millett*, 270 AD2d 520, 521 [2000]).

Similarly, we disagree with the mother's claim that Family Court erred by failing to conduct a *Lincoln* hearing. In making this determination, the court recognized that the child had been reluctant, throughout these proceedings, to discuss with anyone the contact that he had with his mother or the specifics of what had actually occurred during the time he had spent at her home. The court recognized that a *Lincoln* hearing might have had a harmful effect on whatever progress the child had made to date in therapy and acted providently to "spare the child any further stress" (*Posporelis v Posporelis*, 41 AD3d 986, 991 [2007]).

The mother also takes exception to Family Court's order regarding visitation and the requirement that it be held in a specific place and be supervised. In that regard, Family Court ordered the mother to have visitation on Wednesdays from 3:30 P.M. until 5:00 P.M. at a Family Court child's center and on alternate Saturdays from 2:00 P.M. to 4:00 P.M. at a McDonald's restaurant. Given the mother's history of not complying with the court's orders directing that the child have no contact with Garbera or Trask when in her care, the specific conditions as outlined in the order were justified and enjoy ample support in the record. The order does not seek to deprive the mother, as she claims, of a meaningful opportunity to visit with the child and, in our view, was appropriately structured as to reflect the child's best interest (*see Matter of Maziejka v Fennelly*, 3 AD3d 748, 749 [2004]; *Matter of Larry v O'Neill*, 307 AD2d 410, 411 [2003]).

The mother also seeks to challenge the procedure and factual conclusions upon which Family Court based its initial decision to issue an order of protection and to award physical custody of the child to the father. She argues that the order of protection was issued sua sponte, without the court having a proper petition before it to serve as a basis for the order of protection. The mother never filed an appeal from the order of protection (*see Matter of Houck v Garraway*, 293 AD2d 782, 783 [2002]) and consented to the custody order which incorporated this order of protection and awarded physical custody of the child to the father. Therefore, these claims are not properly before this Court (*see Matter of Barrow v Kirksey*, 15 AD3d 801, 802 [2005], *lv denied* 5 NY3d 701 [2005]). However, considering that Family Court had before it, at the time it originally issued the order of protection, the father's claims that the child was being hit while in the mother's home as well as DSS's investigation regarding Garbera and Trask, it was justified in its concerns that resulted in the order of protection.

Similarly, the mother argues that requiring the permanent

order of protection to remain in effect until the child's 18th birthday without a provision for periodic review was error and inappropriate. Viewing Garbera and Trask's history, and the negative impact each has already had on this child, Family Court acted within its authority in ordering that the order of protection continue until the child's 18th birthday (*see* Family Ct Act § 656; *Matter of Candace S.*, 38 AD3d 786, 788 [2007]; *Matter of Collin H.*, 28 AD3d 806 [2006]; *Matter of Bronson v Bronson*, 23 AD3d 932, 933 [2005]).

Finally, we address the mother's claim that Family Court improperly admitted into evidence the contents of the investigative report issued by DSS. The report was prepared as a result of an investigation by DSS into the father's allegation that the child had reported that he had been struck while at the mother's home.[3] After the report was reviewed by Family Court, it issued the order of protection barring Garbera and Trask from having any further contact with the child. The mother, without asking for a hearing on the findings contained in the report, consented to the order giving physical custody of the child to the father. More importantly, the contents of the report simply restated what had already been established by other evidence introduced at the hearing and, in the context of this proceeding, its admission was harmless error (*see Matter of Rush v Rush*, 201 AD2d 836, 837-838 [1994]). We have reviewed the mother's remaining claims and find them to be without merit.

Peters, J.P., Spain, Rose and Lahtinen, JJ., concur. Ordered that the corrected order is affirmed, without costs.

---

3. The child did not identify who it was that allegedly struck him.