■ In the Matter of SHAREE L. GUNTHORPE, Appellant, v KENNETH W. CATHEY, Respondent. (And Another Related Proceeding.) [859 NYS2d 767]—

Kavanagh, J. Appeal from an order of the Family Court of Madison County (McDermott, J.), entered August 13, 2007,

which, among other things, dismissed petitioner's application, in two proceedings pursuant to Family Ct Act articles 6 and 8, for custody of the parties' child.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) have a son (born in 2006) and, up until the child was approximately six months old, lived together in the mother's parents' home. In December 2006, the child was brought to a local hospital after it appeared that there were bite marks on his shoulders. After it was confirmed that these were human bite marks, the mother filed a family offense petition as well as a petition for sole custody of the child, claiming that the father had bitten the child. Family Court initially issued a temporary order of protection prohibiting the father from having any contact with the mother or the child, but later amended its order to allow the father supervised visitation with the child. After a fact-finding hearing, Family Court dismissed the family offense petition, vacated the amended order of protection and awarded the parties joint legal custody of the child, with primary physical custody to the father. The mother now appeals.*

The sole focus of the mother's appeal is Family Court's decision to award the father primary physical custody of the child. She challenges Family Court's finding that such placement was in the best interest of the child and argues that it not only lacked a sound and substantial basis in the record, but that it also failed to give adequate weight to the fact that she had been the child's primary caregiver since his birth. We disagree.

In determining what custodial arrangement would serve the child's best interest, the primary consideration is whether either parent is presently able to provide the child with a stable home environment and positive parental guidance (see *Eschbach v Eschbach*, 56 NY2d 167, 172 [1982]; *Matter of Goldsmith v Goldsmith*, 50 AD3d 1190, 1193 [2008]). The record establishes that while neither the mother nor the father was considered an unfit parent, neither was particularly well-suited to assume sole responsibility for the child's care (see *Matter of Jiminez v Jiminez*, 301 AD2d 971, 972 [2003]; see also *Matter of Neail v Deshane*, 19 AD3d 758, 758 [2005], *lv denied* 5 NY3d 711 [2005]). Family Court correctly considered the fact that both the mother and father would greatly benefit from the support of their immediate family and, in fact, the father makes great use

* Although the mother's notice of appeal purports to appeal from a decision entered in August 2007, from which no appeal lies (see Family Ct Act § 1112), we will view it as an appeal from Family Court's order entered August 13, 2007 (see CPLR 5520 [c]; *Matter of Isaiah O. v Andrea P.*, 287 AD2d 816, 817 n [2001]).

of his familial support to the benefit of his son. The father testified that he now lives with his parents in a three bedroom home and has access to a backyard and a swimming pool. Because the father is disabled, he is able to provide full-time care for the child. The testimony revealed that the father seeks, receives and follows the advice of his parents and that they provide him ample support and assistance for the child. The father, with this support, evidences his ability to provide a stable home environment for the child. The mother, on the other hand, has moved from her parents' home—a home where she enjoyed the significant assistance of her parents and sister. She failed to provide any evidence as to her present living arrangements or the type of support system she has in place for the child if in fact she is awarded custody. The mother has indicated that shortly after the father moved out, she became involved in another relationship, yet has provided no details about this relationship. Simply put, there is nothing in the record that establishes where or with whom the mother resides or what type of environment the child would be exposed to if she is awarded custody. Accordingly, Family Court's conclusion that the father would provide a more stable home environment for the child if awarded custody enjoys ample support in the record.

Additionally, Family Court, in making a best interest determination, must take into account which parent, if given custody, is more likely to promote and foster the child's relationship with the other parent (see Matter of Gast v Gast, 50 AD3d 1189 [2008]; Matter of Kilmartin v Kilmartin, 44 AD3d 1099, 1103 [2007]). Family Court found that of the two parents, the father appeared more likely to make a good faith effort to promote a positive relationship between the child and the mother and her family. This finding is based on a number of factors, all of which have been substantiated by credible evidence introduced at the hearing. Even after having been accused by the mother of assaulting the child, the father has tried to maintain a civil relationship with the mother and her immediate family for the benefit of the child. The mother, on the other hand, has systematically attempted to prevent the father from having routine parental contact with his child and, by her own admission, has a hostile relationship with the father's parents. In that regard, prior to the parties' separation, the mother engaged in activities which were designed to frustrate the grandparents' efforts to develop a meaningful relationship with the child and repeatedly denied them regular access to him.

We also find troubling the fact that, despite being told by the father that he had seen bite marks on the child, the mother did

not take any steps to conduct her own examination and waited more than 24 hours prior to seeking medical care for the child. Her failure to inform the father that the child was being taken to the hospital is equally troubling given that it was the father who informed her of the existence of the bite marks.

The mother also testified that the father is not fit to have custody because he previously assaulted her. The father adamantly denies this allegation and Family Court, for a number of reasons, found the mother's testimony in this regard to be incredible. It based this conclusion on the fact that the mother not only failed to report any of the alleged assaults to the police, but had never sought an order of protection or appropriate medical care for the injuries that she is alleged to have sustained as a result of these assaults. Furthermore, while the mother claimed to harbor fears for the child's safety, she admits that while they resided together, she routinely left the child alone in the father's care for prolonged periods of time.

Finally, the source of the bite marks found on the child remains a mystery. While human in origin, it could not be established that either bite mark had in fact been made by an adult. Based on the fact that no testimony was introduced at the hearing that anyone ever witnessed the father physically abuse the child and his adamant denial that he was, in fact, responsible, Family Court found that there was insufficient evidence to conclude that he made the marks in question. According due deference to Family Court's credibility determinations (*see Matter of Gast v Gast,* 50 AD3d at 1189-1190; *Matter of Hildenbrand v Hildenbrand,* 37 AD3d 981, 982 [2007]), we see no reason to disturb its determination that the child's best interest would be served by an award of physical custody to the father (*see Matter of Gast v Gast,* 50 AD3d at 1190; *Matter of Martin v Martin,* 45 AD3d 1244, 1245 [2007]; *Matter of Roe v Roe,* 33 AD3d 1152, 1153 [2006]).

Mercure, J.P., Peters, Carpinello and Rose, JJ., concur. Ordered that the order is affirmed, without costs.