Aarons, J.
 

 Appeal from an order of the Family Court of Saratoga County (Hall, J.), entered August 8, 2016, which dismissed petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, for custody of the subject child.
 

 Respondent Stephen E. (hereinafter the father) is the father of a son (born in 2006). Petitioner, who is not the child’s biological mother, was romantically involved with the father and lived at his residence with him and the child since the child was one year old. After the father’s incarceration in 2013, petitioner continued to care for the child. Custody of the child was subsequently granted to the child’s biological mother, but the mother left the state and failed to pick up the child from petitioner. Petitioner then relinquished care of the child to respondent Saratoga County Department of Social Services and, in 2014, he was placed in foster care. In 2016, petitioner commenced this proceeding seeking custody of the child. Following a trial, Family Court dismissed the petition concluding that placing custody of the child with petitioner did not promote the best interests of the child.
 
 [1]
 
 Petitioner appeals. We affirm.
 

 In a custody proceeding, we are guided by the best interests of the child (see Matter of Angellynn S.H.W. [Vivian N.V.], 93 AD3d 1349, 1351 [2012]; Matter of Susan FF. v Maryann FF., 11 AD3d 757, 758 [2004]; cf. Matter of Elizabeth YY. v Albany County Dept. of Social Servs., 229 AD2d 618, 620 [1996]). An examination into the best interests of the child involves the consideration of various factors, including “maintaining stability in the child’s life, the quality of the respective home environments, the length of time the present custody arrangement has been in place and [the] party’s past performance, relative fitness and ability to provide for and guide the child’s intellectual and emotional development” (Matter of Peters v Dugan, 141 AD3d 751, 753-754 [2016] [internal quotation marks and citation omitted]; see Matter of Battisti v Battisti, 121 AD3d 1196, 1198 [2014]). We defer to Family Court’s factual findings and credibility determinations and its decision will not be disturbed so long as it is supported by a sound and substantial basis in the record (see Matter of Southammavong v Sisen, 141 AD3d 905, 906 [2016]; Matter of Stephen G. v Lara H., 139 AD3d 1131, 1133 [2016], lv denied 27 NY3d 1187 [2016]).
 

 The trial evidence reveals that petitioner played a significant role in raising and caring for the child. In this regard, petitioner testified that, while the father worked during the day, she took the child to doctor appointments, attended the child’s school meetings and functions, prepared his meals, and played with him at the house or a nearby park. The father similarly testified that the child referred to petitioner as “mommy” and that petitioner would take care of the child when he was sick.
 
 [2]
 

 Notwithstanding the foregoing, petitioner testified that, after the father was incarcerated in 2013, she “was left [in] the house” with the child and that the “house was falling apart.” In 2014, she married an individual who was in the midst of serving a prison sentence after being convicted for murder in the second degree and endangering the welfare of a child. Petitioner explained that she had known her husband since she was a teenager and that, after the father’s incarceration, the two of them started to communicate with each other on a more frequent basis. Although petitioner was aware of the Department of Social Services’ concerns about this relationship and testified that she would safeguard the child from her husband, petitioner admitted that she took the child to visit her husband while he was incarcerated. The father likewise testified that it “g[a]ve him concern” that petitioner married an individual who was incarcerated for murder.
 

 Family Court found that awarding custody to petitioner was not in the best interests of the child. Although Family Court “d[id] not doubt [petitioner’s] sincerity nor her love for [the child],” the court took note of petitioner’s marriage to her husband. Family Court further found that petitioner’s testimony that there would be no contact between the child and her husband was “undercut” by her act of taking the child to visit her husband while he was still imprisoned (see Matter of Bedard v Baker, 40 AD3d 1164, 1166 [2007]; Matter of Roe v Roe, 33 AD3d 1152, 1155 [2006]). Additionally, the documentary evidence admitted at trial revealed that the child was thriving while under the care of his foster parents and that his needs were being met. In view of the foregoing and according deference to Family Court’s credibility determinations (see Matter of Gentile v Warner, 140 AD3d 1481, 1482 [2016]), we conclude that the dismissal of petitioner’s custody petition was supported by a sound and substantial basis in the record (see Matter of Angellynn S.H.W. [Vivian N.V.], 93 AD3d at 1351; Matter of Susan FF. v Maryann FF., 11 AD3d at 758). We further note that, although not determinative, Family Court’s determination is consistent with the position of the attorney for the child (see Matter of Coleman v Millington, 140 AD3d 1245, 1247 n [2016]).
 

 Finally, while Family Court erred in relying on information derived from a prior permanency hearing, the error was harmless given that such information was also contained in other exhibits admitted at trial (see Matter of Thomas v Osborne, 51 AD3d 1064, 1069 [2008]). We also reject petitioner’s reliance on the reunification provisions of Social Services Law § 384-b (7) (a) inasmuch as petitioner is not the parent of the child. The remaining contentions, to the extent not specifically addressed herein, have been examined and determined to be without merit.
 

 Garry, J.P., Egan Jr., Lynch and Pritzker, JJ., concur.
 

 Ordered that the order is affirmed, without costs.
 

 [1]
 

 . We note that neither the father nor the child’s biological mother makes a claim over the child. The father consented to petitioner’s requested relief and, prior to trial, the mother surrendered her parental rights.
 

 [2]
 

 . The father, who was incarcerated at time of trial, testified via telephone.