Matter of Nilesha RR. (Loretta RR.) (2019 NY Slip Op 04063)





Matter of Nilesha RR. (Loretta RR.)


2019 NY Slip Op 04063


Decided on May 23, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 23, 2019

525897

[*1]In the Matter of NILESHA RR., Alleged to be a Destitute Child. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant; LORETTA RR., Respondent. (Proceeding No. 1.) (And Another Related Proceeding.)
In the Matter of CARMAN M. GARUFI, as Attorney for the Child, Appellant- Respondent, BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent- Appellant. (Proceeding No. 3.)
In the Matter of JOHN UU. et al., Appellants,
and
MARYANN SS., Respondent, and LORETTA RR., Respondent. (Proceeding No. 4.)

Calendar Date: March 20, 2019

Before: Garry, P.J., Egan Jr., Aarons and Pritzker, JJ.


Thomas P. Coulson, Broome County Department of Social Services, Binghamton, for appellant in proceeding No. 1 and respondent-appellant in proceeding No. 3.
Carman M. Garufi, Binghamton, attorney for the child, appellant-respondent.
Monique B. McBride, Albany, for John UU. and another, appellants.
Renee Albaugh, Hamden, for Loretta RR., respondent.



MEMORANDUM AND ORDER
Pritzker, J.
Cross appeals and appeal from an order of the Family Court of Broome County (Connerton, J.), entered October 6, 2017, which, among other things, (1) partially granted petitioner's application, in proceeding No. 3 pursuant to Family Ct Act article 10, to find respondent in violation of a prior order, and (2) dismissed petitioners' application, in proceeding No. 4 pursuant to Family Ct Act article 6, for custody of their former foster child.
Respondent Maryann SS. (hereinafter the mother) and Lawrence TT. (hereinafter the father) are the biological parents of one child (born in December 2013). The father and respondent Loretta RR. (hereinafter the stepmother)[FN1] were in a romantic relationship when the child was conceived and, after the child was born, she went to live with the father and the stepmother. When the child was three months old, she was removed from their care by the Broome County Department of Social Services (hereinafter DSS) and placed with petitioner John UU. (hereinafter the foster father) and petitioner Kathryn UU. (hereinafter the foster mother). The child remained in foster care until January 2015, when she was discharged to the father's care. In March 2016, the father died, at which time the child continued living with the stepmother. Thereafter, in April 2016, Family Court (Dooley, J.), pursuant to a prepetition application, issued a temporary order of removal and the child was again placed with the foster mother and the foster father (hereinafter collectively referred to as the foster parents)[FN2]. In April 2016, the stepmother filed a petition for custody of the child, which was dismissed by Family Court (Connerton, J.). On appeal, this Court reversed and remitted the matter for further proceedings (Matter of Loretta RR. v Maryann SS., 160 AD3d 1065 [2018]).[FN3]
In April 2016, DSS commenced proceeding No. 1 alleging that the child was a destitute child within the meaning of Family Ct Act § 1092 (a). In December 2016, Family Court granted the petition, and the child was adjudicated to be a destitute child. In that order, the court held that the extended visitation that had been occurring between the stepmother and the child, in the absence of any previous custody order, needed to be limited pending a full dispositional hearing and, accordingly, the court ordered that the stepmother should have only limited supervised visitation with the child [FN4]. Approximately one week later, DSS informed Family Court by letter that the child was residing with the stepmother, who was a certified foster parent at that time.
In December 2016, DSS commenced proceeding No. 2, an abandonment petition against the mother, which Family Court ultimately granted. In January 2017, the attorney for the child (hereinafter AFC) commenced proceeding No. 3 claiming that DSS had violated Family Court's December 2016 order by placing the child with the stepmother. In March 2017, the foster parents commenced proceeding No. 4 seeking custody of the child. DSS opposed the foster parents' petition and moved to dismiss it, arguing that the foster parents did not have standing. Although Family Court determined that the foster parents lacked standing to initiate the custody proceeding, it denied DSS's motion to dismiss and, acting pursuant to Family Ct Act § 1094 (c) (1), deemed the foster parents to be parties to the destitute child proceeding, reopened the dispositional hearing in that proceeding and held that the foster parents' custody petition would be consolidated and heard therewith.
After a joint hearing was held as to all four proceedings, Family Court ordered, in relevant part, that, as to the destitute child proceeding, it was in the child's best interests to be placed in the care and custody of DSS. In turn, the court dismissed the foster parents' custody petition. Lastly, the court found, in response to the AFC's petition, that DSS was in civil contempt of the court's December 2016 order, and, accordingly, imposed a $250 fine. The foster parents and the AFC now appeal and DSS cross-appeals.
The main argument on appeal centers around the question of whether Family Court's decision to place the child in the care and custody of DSS is supported by a sound and substantial basis in the record. Prior to reaching that argument, however, we must briefly analyze claims made by both the foster parents and DSS regarding standing. Initially, the foster parents' claim that the stepmother lacked standing to participate in the destitute child proceeding is not preserved for our review, as it was not raised in Family Court (see Matter of Samantha I. v Luis J., 122 AD3d 1090, 1090 [2014]). In its cross appeal, DSS alleges that Family Court erred in giving the foster parents standing to participate in the dispositional hearing in the destitute child proceeding. We disagree. Although the court found that the foster parents lacked standing to pursue a custody petition,[FN5] we find that it was statutorily sound for Family Court to deem the foster parents to be parties to the destitute child proceeding and to reopen the dispositional hearing in that proceeding given that the child had been in the care of the foster parents for approximately 15 months, albeit those months were not consecutive, and the record reveals that they had a "significant connection" to her (Family Ct Act § 1094 [c] [1]).
We turn now to the contention of the foster parents and the AFC that Family Court's decision to place the child with the stepmother and deny the foster parents' custody petition lacked a sound and substantial basis in the record. Initially, we would be remiss not to point out that this argument mischaracterizes the court's disposition. The court did not place the child with the stepmother; rather, it placed her in the care and custody of DSS [FN6]. Indeed, placement with the stepmother was not even an option, as a destitute child proceeding only allows for two dispositions, either: "(1) placing the child in the care and custody of the commissioner of social services; or (2) granting an order of custody or guardianship to relatives or suitable persons pursuant to a petition under article six of [the Family Ct Act]" (Family Ct Act § 1095 [d]). The stepmother did not have a pending custody petition and, therefore, the only authorized dispositions were granting an order of custody to the foster parents, who did have a pending custody petition, or with DSS. Although we are cognizant that, at the time of disposition, it was understood by all parties that a placement with DSS in effect meant a placement with the stepmother — as that is where the child was currently placed and was clearly DSS's preferred [*2]placement — Family Court took great care in analyzing the suitability of the stepmother to make a determination as to what was in the child's best interests.
As relevant here, after making a finding that a child is destitute, Family Court may grant an order of custody or guardianship to relatives or suitable persons under Family Ct Act article 6 if, after fact-finding and disposition, "the court finds that granting custody or guardianship of the child to the relative or suitable person is in the best interests of the child" and that such placement "will provide the child with a safe and permanent home" (Family Ct Act § 1096 [a] [2], [3]). "An examination into the best interests of the child involves the consideration of various factors, including maintaining stability in the child's life, the quality of the respective home environments, the length of time the present custody arrangement has been in place and the party's past performance, relative fitness and ability to provide for and guide the child's intellectual and emotional development" (Matter of Renee DD. v Saratoga County Dept. of Social Servs., 154 AD3d 1131, 1131-1132 [2017] [internal quotation marks and citations omitted]; see Matter of Battisti v Battisti, 121 AD3d 1196, 1198 [2014]). Moreover, deference is accorded to Family Court's factual and credibility determinations, which will not be disturbed so long as they are supported by a sound and substantial basis in the record (see Matter of Southammavong v Sisen, 141 AD3d 905, 906 [2016]; Matter of Barner v Hampton, 132 AD3d 1098, 1099 [2015]).
Family Court properly characterized this case as a "close call for many reasons." However, in reaching its determination and dismissing the foster parents' custody petition, the court considered the evidence presented that the stepmother had a strong bond and commitment to the child and the child had, at the time, been in her care for the past 11 months. The court acknowledged the loving relationship and safe environment at the foster parents' home, as well as the diverse racial and ethnic backgrounds of their other adopted children. However, the court highlighted that the foster parents had not seen the child in 10 months and had only been with the child for approximately 15 nonconsecutive months. It also considered the possible trauma that yet another change in residence would have on the child. In addition, although the court acknowledged its critique of the stepmother in past proceedings, it credited the testimony of those who had witnessed the child's recent interactions with the stepmother and noted that she had demonstrated stability and commitment to the child in the last year. To the extent that the court considered the foster parents' advanced ages as a factor, the foster mother testified as to her various medical conditions and limited ability to engage physically with the child and that her daughter and the foster father primarily cared for the child. Moreover, it should be noted that the testimony elicited at the hearing suggests that the child's father practiced Islam and the stepmother practiced the same while the child was in her care. Based on the foregoing, and according due deference to Family Court's factual and credibility determinations, the court's determination has a sound and substantial basis in the record (see Matter of Wendy KK. v Jennifer KK., 160 AD3d 1059, 1061 [2018]; Matter of Marcus CC. v Erica BB., 107 AD3d 1243, 1246-1247 [2013], lv denied 22 NY3d 911 [2013]). Additionally, we discern no abuse of discretion in Family Court considering the age, race and religions of the foster parents and the stepmother, as these are factors that the court should consider in determining the child's best interests (see Matter of Daniel C., 25 AD3d 1045, 1046 [2006]; Matter of Davis v Davis, 240 AD2d 928, 928-929 [1997]).
Finally, we agree with DSS that Family Court incorrectly held it in civil contempt for noncompliance with the court's December 2016 order. "A party seeking a finding of civil contempt based upon the violation of a court order must establish by clear and convincing evidence that the party charged with contempt had actual knowledge of a lawful, clear and unequivocal order, that the charged party disobeyed that order, and that this conduct prejudiced the opposing party's rights" (Matter of James H., 168 AD3d 1201, 1203 [2019] [internal quotation marks and citations omitted]; see Judiciary Law § 753 [A] [1]). DSS does not dispute that it was aware of the court's order limiting visitation with the stepmother, nor does it dispute that it did not follow that order, thereby establishing the first two elements for a civil contempt finding. Notably, however, DSS contacted the court immediately after receiving the order to advise that the stepmother had been certified as a foster parent and that the child was residing [*3]with her in that capacity. The AFC's petition, filed shortly thereafter, alleged that DSS had violated the order and sought to have the child placed with the foster parents, but failed to allege or present evidence establishing, by clear and convincing evidence, that DSS's failure to comply with the December 2016 order had "prejudiced the [child's] rights" (Matter of James H., 168 AD3d at 1203). Therefore, all of the elements establishing civil contempt have not been established and that portion of Family Court's order must be reversed (compare Matter of Kieran XX. [Kayla ZZ.], 154 AD3d 1094, 1096-1097 [2017]; Matter of Michael M. v Makiko M., 152 AD3d 909, 910 [2017]). Any remaining arguments raised by the parties have been examined and found to be lacking in merit.
Garry, P.J., Egan Jr. and Aarons, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as held Broome County Department of Social Services in civil contempt and assessed a $250 fine, and, as so modified, affirmed.



Footnotes

Footnote 1: We are uncertain whether the father and the stepmother were legally married.

Footnote 2: This occurred after DSS learned that the stepmother had taken the child to South Carolina without permission.

Footnote 3: There was no pending custody petition on behalf of the stepmother at the time of the instant proceedings.

Footnote 4: Notably, a permanency hearing occurred the same day that this order was entered. At said hearing, DSS informed Family Court that the child was residing with the stepmother following a trial discharge the month prior.

Footnote 5: Although, generally, foster parents do not have standing as of right in custody proceedings, an exception applies in circumstances where the foster parents have had continuous care of the child for 12 months (see Social Services Law § 383 [3]; Matter of Rivers v Womack, 178 AD2d 532, 532 [1991]). The exception is not relevant here as the child was not placed with the foster parents for 12 or more consecutive months.

Footnote 6: This distinction is aptly demonstrated as Family Court records reveal that, subsequent to the conclusion of these proceedings, DSS removed the child from the stepmother, which it would not have been authorized to do under a Family Ct Act article 6 proceeding.