[749 NYS2d 550]

In the Matter of DAVID WISSINK, Respondent, v JANE WISSINK, Appellant.

Second Department, November 4, 2002

## APPEARANCES OF COUNSEL

*Laurie T. McDermott*, Sugar Loaf, for appellant.
*Mark Diamond*, New York City, *Law Guardian* for infant.

## OPINION OF THE COURT

S. MILLER, J.

This appeal presents a vexing custody dispute over a teen-aged girl who has expressed a clear preference to live with her father. While both parents are seemingly fit custodians, the father has a history of domestic violence directed at the mother; yet he has never posed a direct threat to the child. Because of this circumstance, we hold that the Family Court erred in awarding custody to the father without first ordering comprehensive psychological evaluations to ensure that this award of custody was truly in the child's best interest.

The child in controversy, Andrea, born June 21, 1986, is the biological child of the mother and father; the mother also has a daughter, Karin, by a prior marriage. The parties have had a tumultuous relationship marked by numerous episodes of heated arguments, physical violence, police intervention and Family Court orders of protection. It is apparent that when it comes to his dealings with the mother, the father is a batterer whose temper gets the better of him. When it comes to Andrea, however, the father is the favored parent; he has never directly mistreated Andrea.

The parties have lived apart at various times during their marriage, and separated most recently in 1999 following yet another physical altercation. The mother commenced a family offense proceeding and a proceeding for custody of Andrea. The father cross-petitioned for custody. The Family Court assigned a law guardian and ordered a mental health study which was clearly deficient. A hearing was held at which the parties, Karin, and other witnesses testified, and the court examined Andrea in camera; she downplayed the father's culpability and expressed her clear preference for living with him.

The order appealed from awarded custody to the father. In separate orders, the Family Court dismissed the mother's custody petition and sustained the mother's family offense petitions, directing, inter alia, that the father enter and complete a

domestic violence program. We now reverse the order awarding custody to the father and remit for a new custody hearing following an in-depth forensic examination of the parties and child.

Andrea's preference for her father and her closely bonded relationship to him were confirmed by her law guardian and the "mental health professional" social worker who interviewed her. Indeed, putting aside the established fact of his abusive conduct toward her mother, Andrea's father appears a truly model parent. He is significantly involved in her school work and her extracurricular activities. They enjoy many pleasurable activities, including movies, shopping, building a barn, and horseback riding. He provides her with material benefits—a television set, clothing, a horse, a trip to Europe. He is loving and affectionate. She is his "princess," his "best girl." In contrast, Andrea's mother has not been significantly involved in her school work or her extracurricular activities, and Andrea does not enjoy her company or their relationship.

Were it not for the documented history of domestic violence confirmed by the court after a hearing, we would have unanimously affirmed the Family Court's award of custody to the father in accordance with Andrea's expressed preference and the evidence documenting their positive relationship. However, the fact of domestic violence should have been considered more than superficially, particularly in this case where Andrea expressed her unequivocal preference for the abuser, while denying the very existence of the domestic violence that the court found she witnessed.

The record is replete with incidents of domestic violence reported by the mother, and by evidence supporting her testimony. The earliest incident that the mother reported was perpetrated when Andrea was merely an infant in 1986. In a fit of anger the father hit and kicked the mother and pulled out chunks of her hair. In the course of the attack she heard him say, "Oh well, she's going to die." On Super Bowl Sunday in 1995, he attacked her, throwing her on the floor, kicking, hitting, and choking her. She sustained marks on her neck and a sore throat causing pain while speaking and inhibiting her ability to swallow.

In March 1995, she obtained an order of protection from the Village Court of Montgomery. In the fall of that year the father allegedly held a knife, approximately 8 to 10 inches long, to the mother's throat while Andrea, then nine, sat on her lap. In February 1996, the mother again obtained an order of protection from the Village Court of Montgomery.

In 1997, the father attacked the mother, hit and kicked her, resulting in her obtaining a permanent order of protection from the Orange County Family Court. The severity of her injuries are documented by a photograph, entered in evidence, showing a large black and blue bruise on her left hip.

In June 1999, the mother left the marital home with Andrea and moved into a shelter where they remained for five days. Upon their return home the father blocked her car in the driveway, yelled at the mother and punched her.

On June 24, 1999, a few days after her return from the shelter, during a dispute over tax returns, the father tried to wrest papers the mother held in her teeth by squeezing her face in his hands, leaving marks and even enlisting the assistance of Andrea; he allegedly directed the child to "hold [the mother's] nose so she can't breathe."

On December 20, 1999, while Andrea was at home, the father attacked the mother, choking her. She had marks on her neck for days.

The latter two incidents were the subjects of the mother's most recent family offense petition, which the court sustained. In doing so, the Family Court also noted that a final order of protection had been entered in 1997, stating "based upon the proceeding [of 1997] as well as the succeeding [incidents] * * * Mr. Wissink is guilty of incidents of domestic violence occurring on June 24, [1999] and December 20, [1999]."

Domestic Relations Law § 240 (1) provides that in any action concerning custody or visitation where domestic violence is alleged, "the court must consider" the effect of such domestic violence upon the best interest of the child, together with other factors and circumstances as the court deems relevant in making an award of custody. In this case the Family Court did not entirely ignore that legislative mandate, and specifically noted that it had considered the effect of domestic violence in rendering its custody determination. However, the "consideration" afforded the effect of domestic violence in this case was, in our view, sorely inadequate.

The court-ordered mental health evaluation consisted of the social worker's interview of Andrea on two occasions (about 45 minutes each) and each parent once (about one hour each). These interviews resulted in the social worker's clearly foreseeable conclusion that Andrea was far more comfortable and involved with her father than her mother, that she did not relate well to her mother, and that she preferred living with her father.

In a case such as this, where the record reveals years of domestic violence, which is denied by the child who witnessed it, and the child has expressed her preference to live with the abuser, the court should have ordered a comprehensive psychological evaluation. Such an evaluation would likely include a clinical evaluation, psychological testing, and review of records and information from collateral sources. The forensic evaluator would be concerned with such issues as the nature of the psychopathology of the abuser and of the victim; whether the child might be in danger of becoming a future victim, or a witness to the abuse of some other victim; the child's developmental needs given the fact that she has lived in the polluted environment of domestic violence all of her life and the remedial efforts that should be undertaken in regard to all parties concerned.

The devastating consequences of domestic violence have been recognized by our courts, by law enforcement, and by society as a whole. The effect of such violence on children exposed to it has also been established. There is overwhelming authority that a child living in a home where there has been abuse between the adults becomes a secondary victim and is likely to suffer psychological injury.

Moreover, that child learns a dangerous and morally depraved lesson that abusive behavior is not only acceptable, but may even be rewarded (*see People v Malone,* 180 .Misc 2d 744, 747, citing Frazee, Noel and Brenneke, Violence Against Women, Law and Litigation § 1:40, at 1-43—1-44 [Clark Boardman Callaghan 1997]).

In many states a rebuttable presumption that perpetrators of domestic violence should not be eligible for legal or physical custody has been accepted and the courts of those states are required to specify why custody should be granted to an offender and how such an order is in the best interest of the child (*see* Philip M. Stahl, Complex Issues in Child Custody Evaluations, at 36 [Sage 1999]). We in New York have not gone that far, but the Legislature, in enacting Domestic Relations Law § 240, has recognized that domestic violence is a factor which the court must consider among others in awarding custody or visitation.

Moreover, the court also erred in limiting the mother's inquiry regarding the father's failure to comply with child support obligations and in finding financial consideration "not relevant at all" to the custody proceeding. The Family Court was required to consider the parties' support obligations and their

compliance with court orders (Domestic Relations Law § 240 [1] [a] [4]) and to evaluate each party's ability to support the child (*see Eschbach v Eschbach*, 56 NY2d 167, 172). If, as the mother alleged, the father violated the child support order, and if he terminated the telephone and electrical services in the marital residence after he had been ordered to stay away pursuant to an order of protection, these facts would clearly be relevant to the court's custody determination.

Only after considering the complex nature of the issues and the relative merits and deficiencies of the alternatives can the court attempt to determine the difficult issue of the best interest of the child in a case such as this.

For the above reasons we thus reverse the custody order and direct a new custody hearing to be conducted after completion of a comprehensive psychological evaluation of the parties and the child. However, we stay Andrea's return to her mother, permitting her continued residence with her father, pending a final custody determination.

We note that the foregoing is without prejudice to the mother renewing her petition for custody, which was dismissed by an order from which no appeal was taken.

FLORIO, J.P., McGINITY and ADAMS, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law and as a matter of discretion in the interest of justice, without costs or disbursements, the petition is denied, and the matter is remitted to the Family Court, Orange County, for further proceedings in accordance herewith; and it is further,

Ordered that pending the final custody determination, the father shall have temporary custody of the child, Andrea, with visitation to the mother pursuant to the terms of the order appealed from.