N.S. v T.S. (2024 NY Slip Op 50604(U))

[*1]

N.S. v T.S.

2024 NY Slip Op 50604(U)

Decided on May 20, 2024

Supreme Court, Nassau County

Dane, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 20, 2024
Supreme Court, Nassau County

N.S., Plaintiff,

against
T.S., Defendant.

Index No. XXXXXX/2022

Edmund M. Dane, J.

INTRODUCTION
Considered on this summary judgment application are the issues of custody and visitation of a minor child. The Court notes at the outset that no factual issues are in dispute.[FN1]
N.S. and T.S. were married on May 21, 2019. They share a daughter, A., who was born on XXXX, 2019. While the beginning of the parties' relationship "seemed perfect",[FN2]
that perfection was short-lived. T.S. suffered a back injury at work. He became reliant on, and then addicted to, Percocet and Xanax. His doctor refused to prescribe him any further pain medication. T.S. was fired from his job. Instead of saving money with a newborn on the way, he began diverting marital funds to purchase painkillers illegally. During N.S.'s pregnancy, T.S. revealed, for the first time, that he was previously addicted to drugs. He began an extramarital affair with an old girlfriend. The downward spiral, however, only got worse.
At some point, T.S. could not longer (illegally) obtain pills. He turned to heroin. Then, at the onset of the coronavirus pandemic, T.S. began purchasing parts for firearms. He continued to use heroin during this time. T.S. amassed a stockpile of weapons. He turned belligerent and violent. T.S. told N.S. that he was going to "seriously fuck you up". He called his daughter a "fucking retard". T.S. would spend $1,200 a week on heroin. He'd spend thousands more on gun [*2]parts. He brought a pitbull into the home which N.S. was afraid of, and made N.S. care for it, despite her fears. N.S. could not say "no" to anything. If she did, she suffered consequences. T.S. hit N.S.. He would choke her, threaten to kill her, and point a loaded gun at her. T.S. threatened N.S.'s life - multiple times. If N.S. questioned T.S. about his drug habit, he would threaten to kill the whole family. If she questioned him about money, he would repeatedly strike N.S. while A. was in her arms. This went on for a year. N.S. planned an escape from T.S. with the aid of her mother, but her mother was diagnosed with a medical condition that put her plans on hold. N.S. then gained enough confidence to leave T.S. without help when A. needed to be hospitalized.
On February 17, 2022, A. was admitted to a Hospital to undergo a tonsillectomy. The tonsillectomy was a success, but her stay at the Hospital - a place of healing and recuperation - turned into a nightmare. T.S. arrived at the Hospital after A.'s surgery, only after N.S. begged him to come for the sake of A. High on drugs and carrying a loaded firearm, T.S. entered A.'s room. He pulled a firearm out from his pocket and pointed it towards N.S. and A.. He threatened to kill both of them - his wife, and his child - in front of everyone at The Hospital. After N.S. screamed in fear and yelled for help, T.S. fled. Security officers at The Hospital called the police. N.S. was speaking with the social worker at The Hospital when T.S. called her. N.S. answered the phone call and enabled the speaker phone function. T.S. threatened to kill N.S. in her sleep when she returned home. The police arrived on scene. They found T.S. in the parking lot in possession of illegal firearms and drugs. N.S. informed the police of the stockpile of weapons at their home. When T.S. was arrested, he was immediately placed in jail. He remains incarcerated.
Then came litigation. A neglect proceeding was commenced against T.S. in the Nassau County Family Court. Criminal charges were brought against T.S. in both Nassau County and Queens County. The instant matrimonial action was also commenced and assigned to the undersigned Justice after N.S. filed a request for a Preliminary Conference. On August 22, 2023, a finding of neglect was entered against T.S. by the Family Court. In Queens County, on October 27, 2023, T.S. pled guilty to criminal possession of a weapon (second degree) with intent to use. On January 12, 2024, T.S. was sentenced to seven (7) years incarceration with four (4) years of post-release supervision. N.S. was granted a stay away order of protection in her favor against T.S.. A stay away order of protection was issued in favor of A. against T.S.. A.'s order of protection expires on January 11, 2039.[FN3]
In Nassau County, T.S. pled guilty to criminal possession of a weapon (second degree) and was sentence to seven (7) years incarceration with five (5) years of post-release supervision. Another order of protection was issued in favor of N.S. against T.S.. In total, T.S. was the subject of thirty-nine (39) charges stemming from the incident herein described. N.S. commenced this action for divorce and ancillary relief on April 11, 2022. N.S. interposed the instant application on February 7, 2024, after the disposition of the neglect proceeding and after the disposition(s) of the Queens County and Nassau County criminal proceedings.
The principal issue on this application is whether or not this Court is able to grant N.S. summary judgment with respect to the issues of custody and parenting time without the necessity of a trial or a plenary hearing. The instant application provides this Court with an opportunity to address whether or not the facts of this case - which (again) are undisputed - fall outside of the [*3]ambit of the general rule that custody determinations should, generally, only be made after a full plenary hearing. See generally S.L. v. J.R., 27 NY3d 558 (2016). The Court finds that the facts of this case give rise to a limited exception to that general rule. T.S. has been adjudicated to have neglected A.. T.S. is prohibited from contact and communication with A. by court order until 2039, when A. will be approximately twenty (20) years old. This Court finds that there are no triable or material issues of fact to adjudicate, and, after the burden shifted to T.S. to show the existence of a material issue of fact to warrant a trial, he failed to do so. The best interests of A. dictate N.S.'s application being granted in its entirety.
PRELIMINARY STATEMENT
The Plaintiff moves by Notice of Motion dated February 9, 2024 (Motion Sequence No.: 001) seeking an Order: (a) Granting summary judgment pursuant to CPLR § 3212; (b) Awarding sole legal and residential custody of the parties' minor child, A. S. (DOB XX/XX/19), to the Plaintiff mother based on a change in circumstances; (c) Denying Defendant any communication and/or visitation with A. S.; and (d) Granting such other, further, and different relief in favor of the Plaintiff as to this court may deem just and proper under the circumstances.
BACKGROUND
This action for divorce and ancillary relief was commenced by the filing of a Summons and Complaint with the Nassau County Clerk's Office on April 11, 2022. The Plaintiff appeared through counsel, Capetola & Divins, P.C. On July 13, 2022, this Court issued an Order Directing Preliminary Conference and directed the parties to appear for a Preliminary Conference with the Court on July 29, 2022. On July 29, 2022, this Court signed the Preliminary Conference Stipulation & Order in the absence of the Defendant. On September 12, 2022, this Court issued an Order Assigning Counsel Pursuant to Judiciary Law 35(8) whereby it appointed Mark Green, Esq., as attorney for the Defendant.[FN4]
On October 21, 2022, this Court issued an Order Appointing Attorney for the Child whereby it appointed Lisa Silverman, Esq., as attorney for the child. Due to Ms. Silverman's resignation from the panel, on January 9, 2023, this Court issued another Order Appointing Attorney for the Child whereby it appointed Susan G. Mintz, Esq., as attorney for the child. This Court issued a Certification Order on April 24, 2023.
THE PARTIES' CONTENTIONS
Plaintiff's Contentions:
The Plaintiff argues that the Nassau County Family Court found that the Defendant neglected their daughter. She sets forth that the Defendant plead guilty in Queens County to criminal possession of s weapon (second degree) and was sentenced to seven (7) years of incarceration with four (4) years of post-release supervision. She also sets forth that the Queens County Criminal Court issued a "stay away/no contact" order against the Defendant in favor of the child until she is eighteen years old. She also sets forth that the Defendant plead guilty in Nassau County to criminal possession of a weapon (second degree) and was sentenced to seven [*4](7) years of incarceration with five (5) years of post-release supervision. The Plaintiff argues that the Defendant was high on drugs, entered The Hospital with a loaded firearm and pointed it at her when she was holding the child and threatened to kill her. She argues that the Defendant, after running off, was found in the hospital parking lot with two loaded "ghost guns" - a 10 mm pistol and a 9 mm pistol. The Plaintiff argues that she has always been the primary caretaker of the child, taking the child to school, caring for her when she is sick, and bathes her and puts her to sleep every night. She argues that she has been the only parent in the child's life over the last two years. She argues that the Order of Protection does not provide the Defendant for any contact, communication or access with the child. She argues that the Defendant was the subject of thirty-nine (39) charges stemming from this incident. She argues that the Defendant is a danger to her and the child.
Affirmation of Attorney for the Child:
The AFC joins in the application of the Plaintiff, and argues that the Defendant's presence in the life of the child is not in her best interests. She argues that the Defendant's action are "undisputed facts" that prove that is in the best interests of this child for the Plaintiff to have custody. The AFC argues that the Defendant is "precluded from any contact whatsoever with the parties' daughter until the year 2039" and that the Order of Protection does not provide for a court of competent jurisdiction to alter or modify said Order. The AFC argues that the Family Court has already adjudicated the Defendant to have neglected the child, and, therefore, custody to the Plaintiff is in the best interests of the child, as the Defendant has demonstrated a "complete a total disregard for the safety and well-being of the parties' daughter". She argues that the Defendant's decision to enter a hospital with a loaded firearm demonstrates and inability to act responsibly as a parent.
DISCUSSION + ANALYSIS
SUMMARY JUDGMENT
Applications seeking summary judgment are governed by CPLR § 3212. CPLR § 3212(b) provides, in relevant part:
"...[s]upporting proof; grounds; relief to either party. A motion for summary judgment shall be supported by affidavit, by a copy of the pleadings and by other available proof, such as depositions and written admissions. The affidavit shall be by a person having knowledge of the facts; it shall recite all the material facts; and it shall show that there is no defense to the cause of action or that the cause of action or defense has no merit...[t]he motion shall be granted if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party. Except as provided in subdivision (c) of this rule the motion shall be denied if any party shall show facts sufficient to require a trial of any issue of fact..."
Summary judgment is a drastic remedy which is available in all actions and will only be granted if there are no disputed material facts to warrant a trial (see CPLR § 3212; see also, Nicholas Di Menna & Sons v. City of New York, 301 NY 118, 121 (1950)). When adjudicating a motion for summary judgment, the court's function in deciding the motion is to ascertain the [*5]existence of material issues of fact based upon the examination of the proofs set forth by the parties through affidavits based upon personal knowledge. Behar v. Ordover, 92 AD2d 557 (2d Dept. 1983) (emphasis added). The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, providing sufficient evidence to demonstrate the absence of any material issues of fact. Failure to make such a showing requires a denial of the motion regardless of the sufficiency of the opposition. Winegrad v. New York Univ. Med. Center, 64 NY2d 851 (1995). Further, when deciding a motion for summary judgment, the court must construe the pleadings in the light most favorable to the non-moving party. Baker v. Briarcliff School Dist., 205 AD2d 652 (2d Dept. 1994).
*
The Court is cognizant of the issues that are the subject of this summary application: custody and visitation. The Court recognizes the pronouncement of the Court of Appeals in S.L. v. J.R.:
Our precedent makes clear that custody determinations should "[g]enerally" be made "only after a full and plenary hearing and inquiry". This general rule furthers the substantial interest, shared by the State, the children, and the parents, in ensuring that custody proceedings generate a just and enduring result that, above all else, serves the best interest of a child...Given the goals of stability and permanency, as well as the weight of the interests at stake, the societal cost of even an occasional error in a custody proceeding is sizeable...The value of a plenary hearing is particularly pronounced in custody cases in light of the subjective factors—such as the credibility and sincerity of the witnesses, and the character and temperament of the parents—that are often critical to the court's determination.
S.L. v. J.R., 27 NY3d 558 (2016) (internal citations omitted).
However, notwithstanding and irrespective of that pronouncement, the Court of Appeals has reiterated that custody determinations must be entrusted to the sound discretion of the trial court, and, nonetheless, that the "general right" to a hearing in custody case is not an absolute one. S.L., 27 NY3d at 563 (emphasis added). Additionally, a hearing is not required where undisputed facts are before the court. Matter of Nieves v. Medina, 224 AD3d 756 (2d Dept. 2024). To the extent that the Court is inclined to render a custody determination without the necessity of a hearing or trial, the Court should clearly articulate the undisputed evidence which supports its determination. See generally Loggia v. Verardo, 167 AD3d 612 (2d Dept. 2018) (petition to modify custody granted without a hearing affirmed with supreme court clearly articulating undisputed evidence to support determination).
*
Domestic Relations Law § 240(1)(a) provides:
"...[i]n any action or proceeding brought...for a divorce...the court...shall enter orders for custody and support as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties and to the best interests of the child..."
The only absolute in the law governing custody of children is that there are no absolutes. Friederwitzer v. Friederwitzer, 55 NY2d 89 (1982). Disputes involving custody and visitation are acknowledged to be among the most difficult the courts are called upon to resolve, for they so deeply affect the lives of children and the parents who love them. Daghir v. Daghir, 82 AD2d 191 (2d Dept. 1981). Indeed, while neither parent has a fundamental right to custody (see Matter of Scott v. Powell, 146 AD3d 964 (2d Dept. 2017)), and while the best interests of the child usually lie in his being nurtured and guided by both parents (see Matter of Johnson v. Kelly, 193 AD3d 735 (2d Dept. 2021)), the paramount concern when making a custody determination is the best interests of the child under the totality of the circumstances (see generally Matter of Mahoney v. Hughes, 2024 NY App. Div. LEXIS 2744 (2d Dept. 2024)), and courts must be vigilant to assure that children are fully protected and their best interests secured (see C.M. v. E.M., 82 Misc 3d 198 (Supreme Court Nassau County 2023)). The Court must ensure that the award of custody is predicated on the child's best interests. Matter of Sims v. Boykin, 130 AD3d 835 (2d Dept. 2015). Furthermore, any court considering the question of child custody must make every effort to determine what will promote the child's welfare and happiness. Eschbach v. Eschbach, 56 NY2d 167 (1982).
While, of course, there can be no absolutes in making a custody determination, there are policies to guide the court in determining what is in the best interests of the child. Eschbach, 56 NY2d at 171. The factors to be considered in making a determination with respect to the best interests of the child include the quality of the home environment and the parental guidance the custodial parent provides for the child, the ability of each parent to provide for the child's emotional and intellectual development, the financial status and ability of each parent to provide for the child, the relative fitness of the respective parents, and the effect an award of custody to one parent might have on the child's relationship with the other parent. Angelova v. Ruchinsky, 126 AD3d 828 (2d Dept. 2015). Along with these factors, the court must also consider the stability and continuity afforded by maintaining the present arrangement. Angelova, 126 AD3d at 829.
Recently, the Second Department was presented with an appeal from an order which granted a mother's motion for summary judgment on her petition for sole legal and physical custody of those children. Matter of Palumbo v. Palumbo, 2024 NY App. Div. LEXIS 2360, 2024 NY Slip Op 02324 (2d Dept. 2024). In affirming the Family Court's granting of summary judgment to the mother, the Second Department wrote:
Contrary to the father's contention, a hearing was not required under the particular circumstances of this case. Here, the mother demonstrated, prima facie, that it was in the best interests of the children to award her sole legal and physical custody. It was undisputed that the terms of the father's probation prohibited him from having any contact with the children as a result of his conviction of sexual abuse in the second degree of the children's half-sister. The Family Court also conducted the mandatory review of decisions addressing custody, reports of the statewide registry of orders of protection, and reports of the sex offender registry, which revealed that the father was "a level 2 sex offender on probation stemming from a January 14, 2021 conviction." In opposition, the father failed to raise a triable issue of fact. The father's unsubstantiated and conclusory allegations were insufficient to defeat a motion for summary judgment. As such, the undisputed facts [*6]before the court enabled it, without a hearing, to make a provident determination that it was in the best interests of the children to award sole legal and physical custody to the mother.
Matter of Palumbo, 2024 NY App. Div. LEXIS *1-*2.
Here, the Court does not find the existence of any triable or material issue of fact with respect to the issues of custody and visitation. The Court will address the issues of legal custody and residential and physical custody, visitation, the factors it considered, and domestic violence (see infra).
A. Legal Custody
The Court finds no triable issue of fact that would yield a result other than the best interests of the child being served with the Plaintiff having sole legal custody of the child. Parental decision-making, is, of course, a function that is tied to legal custody. J.R. v. M.S., 56 Misc 3d 975 (Supreme Court New York County 2017); see also Trazzera v. Trazzera, 199 AD3d 855 (2d Dept. 2021) (decision making is part and parcel to legal custody). Joint custody is inappropriate where the parties have an acrimonious relationship and are unable to communicate with each other. See generally Benedict v. Benedict, 169 AD3d 1522 (4th Dept. 2019). Here, the Court notes the existence of domestic violence between the parties (see supra and see infra). The Court cannot, under any circumstance, conclude that these parties can effectively communicate with one another, especially given the threats of harm made by the Defendant against both the Plaintiff and the child. The Court cannot expect the Plaintiff to have to communicate with the Defendant - who is incarcerated and who has threatened the life of the Plaintiff - on matters concerning the health, safety, education and welfare of this child. In fact, the Defendant's actions, as described herein, leads this Court to the inexorable conclusion that these parties cannot reasonably communicate about the welfare of this child inasmuch as the Defendant's pointing a firearm at the child, is, in and of itself, contrary to the welfare of this child. To conclude otherwise would be a legal oxymoron. Not only has the Court considered the Defendant's actions and his current incarceration but the Court notes the existence of an Order of Protection [FN5]
with an expiration date of May 24, 2037, which includes not only "stay away" provisions, but also a refrain from communication or any other contact with the Plaintiff. At this juncture, the Defendant is prohibited - by court order - from communicating with the Plaintiff. Therefore, there exists no triable or material issue of fact as to the best interests of A. being served with the Plaintiff making decisions for her. See CPLR § 3212(b). The Court incorporates the factors considered and domestic violence allegations herein by reference (see Sections "C" and "D", infra).
B. Residential and Physical Custody
Physical custody, or residential custody, has to do with which parent the child lives with the majority of the time. J.R., 56 Misc 3d at 988. Here, given the Defendant's current incarceration, there is no triable issue of fact as to which parent the child will be living with: the [*7]Plaintiff. Not only that, the existence of the Order of Protection [FN6]
in favor of the child against the Defendant is a "stay away" from the child, the child's home, place of business, school, place of employment, that the child's address is confidential, and that the Defendant refrain from communication or any other contact with the child. At this juncture, the Defendant is prohibited - by court order - from contact or communication with the child, and the child is protected with a confidential address, meaning the Defendant is not allowed to even know where the child lives. Additionally, the Court has considered that the Defendant has been found by the Family Court to have neglected the child. Therefore, there exists no triable or material issue of fact as to the best interests of A. being served with the Plaintiff being designated the physical and residential parent of her. See CPLR § 3212(b). (see Sections "C" and "D", infra).
C. Visitation
Generally, visitation is a joint right of the noncustodial parent and the child. Matter of Spampinato v. Mazza, 152 AD3d 525 (2d Dept. 2017). Absent extraordinary circumstances where visitation would be detrimental to the child's well-being, a noncustodial parent has a right to reasonable visitation privileges. Nancy M. v. Brian M., 227 AD2d 404 (2d Dept. 1996). While the denial of visitation to a noncustodial parent constitutes a drastic remedy (see Matter of Tuttle v. Mateo, 121 AD3d 1602 (4th Dept. 2014)), a denial of visitation may be employed where there are compelling reasons for doing so and there is substantial evidence that visitation will be harmful to the child's welfare (see In re Cameron C., 283 AD2d 946 (4th Dept. 2001)).
The Court finds substantial evidence and compelling reasons to deny the Defendant visitation with the child. Among the manifold factors set forth herein (see Section "D", infra), the Order of Protection in favor of the child (as described herein) precludes this Court from ordering contact or communication. The Court declines to, ostensibly, modify that Order of Protection. In addition, this Court declines to order the child to have contact or communication with the very person who threatened to kill her. The Court will not put the child in a room with a person who drew a loaded firearm and pointed in her direction, nor will the Court force this child to communicate with the very person who threatened to kill both her and the Plaintiff. That conduct, in and of itself, compromised the safety and well-being of the child. See Matter of Bailey v. Bailey, 213 AD3d 1329 (4th Dept. 2023) (while visitation with a noncustodial parent is presumed to be in a child's best interests, mother rebutted that presumption inasmuch as she demonstrated by a preponderance of the evidence that the children's health and safety were compromised while in the father's care). Therefore, there exists no triable or material issue of fact as to the best interests of A. being served with the Defendant having no contact or communication with her. See CPLR § 3212(b). (see Sections "C" and "D", infra).
D. Factors Considered by the Court
Quality of the Home Environment:
The Court finds that the Plaintiff is the only parent who can provide a quality home environment for the child. The Court notes the Plaintiff's undisputed assertion that she has been [*8]the primary caretaker of the child since her birth. The undisputed facts before the Court reveal that the Plaintiff takes the child to school, cares for her when ill, bathes and feeds her, reads with her and ensures that the child goes to bed and wakes-up in the morning. See generally Matter of Celina S. v. Donald S., 133 AD3d 471 (1st Dept. 2015) (mother awarded sole custody when record established that mother was child's primary caretaker). In fact, the Court finds that the Plaintiff was the child's only caretaker since the Defendant's arrest, and even beforehand. The Record reflects that the Defendant was either out purchasing drugs, shooting-up on heroin, and spent time engaging in extramarital affairs over caring for his child. The Record is completely devoid of the Defendant doing anything to provide the child with a quality home environment. In fact, the Record reflects that the Defendant only provided the child with a detrimental home environment, since he would either be at home and high on heroin, shooting-up on heroin, or purchasing parts for firearms. There is no triable or material issue of fact as to the Plaintiff being the only parent who provides a quality home environment for the child.
Parental Guidance Provided by the Custodial Parent:
The Court finds that the Plaintiff is the only parent who provided guidance to the child. That includes not only ensuring that the child attends school, but also ensuring the child's medical needs were attended to. The Court has considered that when the child underwent a tonsillectomy on February 17, 2022, the Defendant was not at the hospital before or during that surgery, and failed to provide parental guidance. Instead, it was only the Plaintiff who provided the child with parental guidance before, during and after that medical procedure. The Defendant, on the other hand, only arrived when effectively begged by the Plaintiff. And, when he arrived, he was not only disinterested in providing guidance, care or comfort to the child, he was high on drugs and drew a loaded firearm, pointed it at the Plaintiff and the child and threatened to kill the both of them. The Court finds that the Defendant is utterly incapable of providing parental guidance to this child, no better underscored by the existence of the Order of Protection in favor of the child and that the child's address remains confidential to the Defendant. There is no triable or material issue of fact as to the Plaintiff being the only parent who provides parental guidance to the child.
Ability of Each Parent to Provide for the Child's Emotional and Intellectual Development:
The credible evidence in the Record reflects that the Plaintiff is the only parent who can provide for the child's emotional and intellectual development. The Record reflects that the child is the Plaintiff's priority and that she attends to all of the child's emotional and intellectual needs, without any type of involvement from the Defendant. The Record, on the other hand, reflects that drugs and firearms were the Defendant's priority over his child. The Record reflects that the Defendant had no compunction of striking the Plaintiff while she was holding the child, demonstrating a blatant disregard for the emotional well-being and safety of his child. The Record reflects that the Defendant thought nothing of smacking a cup out of the child's hands; he thought nothing of screaming in the child's face that she is a "fucking retard"; and the Defendant didn't hesitate to slap the child in the face when the child was upset. When the Defendant drew a loaded firearm and pointed it at the child, he demonstrated nothing short of an abject recklessness [*9]which put not only the child's physical safety in danger, but imperiled her emotional state. The Defendant has a demonstrated a marked inability to provide for the child's emotional and intellectual development. There is no triable or material issue of fact that the Plaintiff is the only parent who provides for the child's emotional and intellectual needs.
Financial Status and Ability of Each Parent to Provide for the Child:
The Record admittedly contains no evidence of the Defendant's financial status. He has failed to file a Statement of Net Worth, tax return and/or tax reporting documents in this action. But there is no dispute that the Defendant is currently incarcerated. The Court therefore finds that he has little to no ability to financially provide for the child. On the contrary, the Plaintiff is gainfully employed as a teacher earning over $100,000.00 per annum. There is no triable or material issue of fact that the Plaintiff is the only parent who has the financial ability to provide for the child.
Relative Fitness of the Respective Parents:
The Record reveals that the Plaintiff is nothing short of a fit parent. Contrariwise, the Court finds that the Defendant's conduct demonstrates per se unfitness. The Court has considered the unrefuted assertion that the Defendant called the child a "fucking retard", and has given that undisputed conduct substantial weight. However, the Court has given the most weight to the fact that the Defendant pointed a loaded firearm at the Plaintiff and the child, and threatened to kill both of them. Those facts are undisputed, and it shocks the conscience of the Court. The Court would be remiss if it did not state the obvious, but unfortunate conclusion: drawing a loaded weapon and pointing it at the mother of one's child and the child is, to this Court, per se unfitness. There is no triable or material issue of fact that the Plaintiff is the only fit parent.
Effect Award of Custody to One Parent on Child's Relationship with Other Parent:
This Court, in no way, can begrudge or hold against the Plaintiff that she seeks an order for the Defendant to have no contact or communication with the child. In fact, the Court finds that her position underscores her true belief that this child needs to be protected from the Defendant, who is an unfit parent, and it is consistent with the existing Order of Protection in favor of the child. Not only is the Defendant an unfit parent, but his conduct can best and only be classified as reckless and dangerous. In fact, the Defendant's pointing a loaded firearm at the Plaintiff and the child supports a conclusion that any contact between the Defendant and the child would be inimical to the health, safety and welfare of the child. See Petraglia v. Petraglia, 392 N.Y.S.2d 697 (2d Dept. 1977) (pressing concern and proof that visitation is inimical to the welfare of the children justifies the deprivation of reasonable visitation). There is no triable or material issue of fact as to the effect of the award of custody and the child's relationship with the Defendant.
Stability and Continuity Under the Present Arrangement:
The present arrangement is that the Plaintiff is the only parent caring for the child, and that the Defendant has had no contact or communication with the child since his arrest. The credible evidence in the Record is that the Plaintiff was - and always has been - the only caretaker of the child. Prior to the Defendant's arrest, the only the Plaintiff cared for the child while the Defendant was high on drugs. After his arrest, only the Plaintiff has cared for the child due to, among other things, the Order(s) of Protection and the Defendant's incarceration. There are no circumstances at this time that would convince the Court to alter same. In fact, the present "arrangement" actually precludes any contact or communication with the subject child by court order. To this end, the Order of Protection [FN7]
remains in effect until 2039, when the child will be approximately twenty (20) years old, and directs the Defendant to stay away from the child and to refrain from communication or any other contact with the child. There is no triable or material issue of fact regarding the stability and continuity that the child will benefit from under the current arrangement.
*
D. Domestic Violence (see DRL § 240(1)(a))
The Court must consider the effect of domestic violence upon the best interests of the child. Matter of Wissink v. Wissink, 301 AD2d 36 (2d Dept. 2002). Domestic Relations Law § 240(1)(a) provides, in part:
Where either party to an action concerning custody of or a right to visitation with a child alleges in a sworn petition or complaint or sworn answer, cross-petition, counterclaim or other sworn responsive pleading that the other party has committed an act of domestic violence against the party making the allegation or a family or household member of either party, as such family or household member is defined in article eight of the family court act, and such allegations are proven by a preponderance of the evidence, the court must consider the effect of such domestic violence upon the best interests of the child, together with such other facts and circumstances as the court deems relevant in making a direction pursuant to this section and state on the record how such findings, facts and circumstances factored into the direction.
Indeed, a child's experience of domestic violence can cause harm or put a child in imminent danger of those harms. Matter of Skyli V. (Jamol V.—Shanika E.), 224 AD3d 913 (2d Dept. 2024). Domestic violence continues to plague society, and is a persistent threat to individual safety, family well-being, and the public welfare. Cole v. Cole, 35 NY3d 1012, 1014 (2020) (Rivera, J., dissenting). As Judge Rivera put it in her dissenting opinion in Cole:
"...[i]t took a decade, but the Task Force findings and recommended legislation also led to the eventual amendment of the Domestic Relations Law and Family Court Act to ensure that judicial custody and visitation determinations fully accounted for the effects of domestic violence on children... "
* * *
"...abuse by a spouse injures children both directly and indirectly and is a form of non-physical child abuse. In fact, abuse of a parent is detrimental to children regardless of [*10]whether the children are physically abused themselves or whether they actually witness the violence to the parent. The legislature further noted that children raised in a violent home have reactions of shock, fear and guilt, and have impaired self-esteem and developmental and socialization difficulties. It is in neither a child's nor society's best interest for the child to be placed with a perpetrator of domestic abuse because to do so exposes the child to an increased risk of being directly abused, and it can perpetuate the cyclical nature of family violence: children who are raised in violent homes learn to use physical violence as an outlet for anger and are more likely to use violence to resolve conflicts..."
Cole, 35 NY3d at 1018-1019 (internal citations and quotations omitted).
As Judge Rivera concluded in Cole, inasmuch as the language enacted does not specifically say whether domestic violence allegations must be made and proved in the custody action itself or in any sworn statement, the legislature, in line with its policy concerns, must have intended a broad interpretation of the statute's coverage.[FN8]
Id. at 1019. Domestic Relations Law § 240(1)(a) requires the court to consider the effect of such domestic violence upon the best interests of the child and to state its conclusions on the record. Id. at 1013.
Here, the Court has considered the unrefuted allegations made by the Plaintiff and finds that the Defendant committed acts of domestic violence against the Plaintiff and the child when he drew a loaded firearm and pointed it at both the Plaintiff and the child coupled with a verbal threat to kill the both of them on February 17, 2022. The Court further finds that the Defendant committed acts of domestic violence against the Plaintiff when, after he fled the Hospital on February XX, 2022, he called the Plaintiff and told her that he would kill her in her sleep if she returned home that night. The Defendant's act of pointing a loaded weapon at the mother of his child and the child is a textbook example of domestic violence, and the Court finds that such act has been proven by a fair preponderance of the evidence as it is not disputed. That conduct had, no doubt, an adverse effect on the physical, emotional and intellectual well-being and safety of the child. The Court has therefore given the Defendant's acts of domestic violence great and substantial weight in rendering this determination.
E. Burden Shifting
Once the proponent of a summary judgment motion has established his or her entitlement thereto, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to establish the existence of a material issue of fact which would require a trial. Gardner v. NY City Transit Auth., 282 AD2d 430 (2d Dept. 2001). In addition, the burden shifts to the other party to present facts, in admissible form, demonstrating that genuine, triable issues exist precluding the grant of summary judgment. Zuckerman v City of New York, 49 NY2d 557 (1980); see also DeRosa v. City of New York, 30 AD3d 323 (1st Dept. 2006); see also Wimbledon Fin. Master Fund v. Wimbleson Fund, SPC, 2016 NY Misc. LEXIS 4805 (Supreme Court New York County 2016) (writing that if a prima facie showing has been made, the burden shifts to the opposing party to produce evidence sufficient to establish the existence of material [*11]issues of fact). Here, the Defendant has failed to submit opposition to the instant application, and failed to refute any of the allegations advanced by the Plaintiff. His failure to do so, in this Court's view, constitutes an admission to the facts as alleged by the Plaintiff. The Defendant has failed to raise a triable or material issue of fact as to the Plaintiff's entitlement to legal and physical custody of the child, and that any contact and communication with this child is both prohibited by court order and detrimental to the health, safety and welfare (physical and emotional) of this child.
*
F. Statewide Registry Check
The Court has conducted a review of the related decisions in court proceedings initiated pursuant to article ten of the family court act, and all warrants issued under the family court act. See DRL § 240(1)(a-1)(3)(i). In this vein, the Court found Article 10 history in the Nassau County Family Court wherein the Defendant was the Respondent. The Order of Fact-Finding and Disposition dated August 22, 2023 reflects:
Respondent, T.S., having appeared with counsel; and Respondent, T.S., having voluntarily, intelligently and knowingly consented to the entry of an order of fact-finding pursuant to Family Court Act § 1051(a), and the Petitioner, Child's attorney and all other parties having consented to the entry of such other of fact-finding as well:
* * *
Order of Fact-Finding or Dismissal
ADJUDGED that the Respondent has consented to the entry of an order of fact-finding; and it is hereby
ADJUDGED that the above-named child is a neglected child, as defined in section 1012 of the Family Court Act by T.S..
The Court has also conducted a review of the reports of the statewide computerized registry of orders of protection established and maintained pursuant to section two hundred twenty-one-a of the executive law, and reports of the sex offender registry established and maintained pursuant to section one hundred sixty-eight-b of the correction law. See DRL § 240(1)(a-1)(3)(ii). The Court has considered the Order of Protection issued by the Queens Supreme Criminal Court against the Defendant in favor of the child with an expiration date of January 11, 2039, the Order of Protection issued by the Nassau County Court in favor of the Plaintiff against the Defendant with an expiration date Of May 24, 2037, and the Order of Protection issued by the Queens Supreme Criminal Court in favor of the Plaintiff against the Defendant with an expiration date of January 11, 2039. All of those Order(s) of Protection are, in sum and substance, "stay away" from the Plaintiff and the child, the home of the Plaintiff and the child, the school of the Plaintiff and the child, the business of the Plaintiff and the child, the place of employment of the Plaintiff and the child, contain provision(s) for the confidentiality of the address(es) of the Plaintiff and the child, a "refrain from" communication or any contact with the Plaintiff and the child, with provisions containing "general refrain from" language, among other provisions.
* * *
G. Conclusion
And so, the Court starts where it began: the best interests of this child warrant an award of sole custody to the Plaintiff and the denial of contact and communication between the child and the Defendant. The tragic facts of this case lend the Court to the unconditional conclusion that there are no triable or material issues of fact, and the existing court orders compel that result. For the reasons set forth herein, and because the Plaintiff has demonstrated a prima facie entitlement to judgment as a matter of law, because the Plaintiff has provided sufficient evidence to demonstrate the absence of any material issues of fact., and because the Defendant has failed to present facts, in admissible form, demonstrating that genuine, triable issues exist preclude the grant of summary judgment, it is hereby:
ORDERED, that Branches (a), (b) and (c) of the Plaintiff's Notice of Motion dated February 9, 2024 be and the same is hereby GRANTED TO THE EXTENT set forth in this Decision and Order, and the Plaintiff is awarded summary judgment on the issues of custody and visitation with respect to the subject child, A. S., born XXXX, 2019 (see infra); and it is further
ORDERED, that the Plaintiff is hereby awarded sole legal, physical and residential custody of the subject child, A. S., born XXXX, 2019; and it is further
ORDERED, that the Defendant shall have no contact or communication, of any kind whatsoever, with the subject child, A. S., born XXXX, 2019.
Any other relief requested not specifically addressed herewith is hereby DENIED.
This matter was previously scheduled for a trial on June 18, 2024. The Court, in the exercise of its discretion, sua sponte converts the pending trial to a conference. Given the Defendant's incarcerated status, the Court will elect to conduct this conference virtually via Microsoft Teams. The parties and counsel are hereby directed to appear virtually in the Nassau County Supreme Court Matrimonial Center, 400 County Seat Drive, Mineola, New York 11501 in IAS/Matrimonial Part 11 before the undersigned Justice for a PRE-TRIAL CONFERENCE on the remaining financial issues of this matter on June 18, 2024 at 10:00 a.m.
This constitutes the DECISION AND ORDER of this Court.
Dated: May 20, 2024
Mineola, New York
E N T E R :
Hon. Edmund M. Dane, J.S.C.

Footnotes

Footnote 1:A party moving for summary judgment must demonstrate that there are no disputed issues of fact and that he, she, or it is entitled thereto as a matter of law, pursuant to CPLR § 3212(b). Hermitage Ins. Co. v. Beer-Bros, Inc. of NYC, 48 Misc 3d 369 (Supreme Court New York County 2015).

Footnote 2:See N. S. Affidavit ¶ 5.

Footnote 3:At that time, A. will be approximately twenty (20) years old.

Footnote 4:The scope of Mr. Green's representation of the Defendant is limited to the issues of custody and parenting time. 

Footnote 5:Issued by the Nassau County Court (Teresa K. Corrigan, J.).

Footnote 6:Issued by the Queens County Supreme Criminal Court (David J. Kirschner, J.).

Footnote 7:Issued by the Queens County Supreme Court.

Footnote 8:Referencing Domestic Relations Law § 240(1)(a).